WATERS et al. v. GUILE.

(Circuit Court of Appeals, Sixth Circuit. July 20, 1916.)

No. 2784.

1. COMMERCE ⊚⟳27—"INTERSTATE COMMERCE"—WHAT CONSTITUTES.
A brakeman on a train containing cars loaded with interstate freight is engaged in "interstate commerce," within the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65, amended by Act April 5, 1910, c. 143, 36 Stat. 291 [Comp. St. 1913, §§ 8657–8665]), though the train runs only between intrastate points.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ⊚⟳27.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. COMMERCE ⊚⟳8—INJURIES TO SERVANT—APPLICATION OF STATE LAWS.
Despite the Michigan Workmen's Compensation Act (Pub. Acts 1912 [Ex. Sess.] No. 10), the remedy of a brakeman engaged in interstate commerce for injuries occasioned by the negligence of the railroad company is under the federal Employers' Liability Act, though his train ran only between intrastate points.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ⊚⟳8.]

---

⊚⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. COMMERCE ⬡⇒8—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT.

Where a railroad company operating a line in Michigan elected to come under the Michigan Workmen's Compensation Act, the fact that an employé engaged in intrastate as well as interstate commerce did not give notice of his nonassent does not bring him within the Michigan Act.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ⬡⇒8.]

4. MASTER AND SERVANT ⬡⇒351—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—ELECTION TO COME UNDER.

An employé of the defendant railroad company, which had elected to come under the Michigan Workmen's Compensation Act, injured while engaged in interstate commerce, gave notice of injury to the railroad company and the Industrial Board in conformity with the local compensation act, but settlement under the act was not had, there being a disagreement as to the average wages of the employé. The employé's right of action was governed by the federal Employers' Act, the injuries being occasioned by negligence. Held that, notwithstanding part 6, § 1, of the Michigan act, providing that, if an employé of any employer subject to the act files any claim with or accepts any payment from such employer, such action shall constitute a release of all demands at law, the injured employé might sue under the federal Employers' Liability Act, for the section referred to was intended to apply only to those subject to the state act, nor could the state Legislature thus restrict the remedy afforded by the federal act.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⬡⇒351.]

5. MASTER AND SERVANT ⬡⇒351—REMEDIES FOR INJURIES—ESTOPPEL.

In such case the fact that the employé's medical expenses for the first three weeks were paid by the company in accordance with the Michigan Act (part 2, § 4) does not work any estoppel, for, had the employé paid such expenses, he might have recovered them as damages.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⬡⇒351.]

6. ESTOPPEL ⬡⇒88(1)—EQUITABLE ESTOPPEL—WHAT CONSTITUTES.

That a brakeman, injured while engaged in interstate commerce, signed an account stating that no one was to blame for the accident, does not estop him from subsequently suing under the federal Employers' Liability Act, on the ground that the injuries were not the result of negligence, for such statement merely affected his credibility.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 235–238, 240; Dec. Dig. ⬡⇒88(1).]

7. APPEAL AND ERROR ⬡⇒994(2)—REVIEW—JURY QUESTIONS.

The credibility of witnesses is for the jury, and cannot be reviewed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3902, 3903; Dec. Dig. ⬡⇒994(2).]

8. PLEADING ⬡⇒398—PROOF—VARIANCE.

A variance between pleading and proof is immaterial, unless such as to mislead the opposite party.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1338; Dec. Dig. ⬡⇒398.]

9. PLEADING ⬡⇒236(5)—AMENDMENT—ALLOWANCE—DISCRETION OF COURT.

In an action by plaintiff, a brakeman, injured by a sudden or emergency stop of the train, which threw him from the car on which he was riding, the declaration as originally filed charged that the engineer was at fault in making an emergency stop in response to a service stop signal. The head brakeman, to whom plaintiff transmitted signals, testified that he received an emergency stop signal after the service stop signal. *Held*

⬡⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that, as an amendment to meet the proofs is within the sound discretion of the trial judge, it was not an abuse of discretion to allow plaintiff to amend by alleging negligence in the head brakeman in giving an emergency stop signal, which plaintiff testified he had not given, for that could not have surprised defendant.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 601, 605; Dec. Dig. ☞236(5).]

10. MASTER AND SERVANT ☞289(32)—INJURIES TO SERVANT—ACTIONS—INSTRUCTIONS.

The brakeman testified that he was standing near the center of the car when the sudden stop was made, and the conductor, who testified as to the suddenness of the stop, stated that as the train was stopped he did not believe he could have staid on the car. *Held* that, in view of the testimony of the necessity of the brakeman standing where he could observe the last car, the court could not charge as a matter of law that he was guilty of negligence in standing where he did, and a charge in effect so declaring was properly refused.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1124; Dec. Dig. ☞289(32).]

11. TRIAL ☞255(11)—INSTRUCTIONS—REQUESTS.

In such case an instruction presenting the question whether plaintiff was standing as he testified, and allowing the jury to find that if he was so standing he was not negligent, but if he was standing at the end of the car he was negligent, not having been requested, it was not reversible error for the court to fail to so instruct.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 637; Dec. Dig. ☞255(11).]

12. TRIAL ☞253(9)—INSTRUCTIONS—REFUSAL OF REQUEST.

In a railroad accident case, where there was testimony that no emergency existed, a requested instruction that if, after the engineer began to obey the service stop signal, such signal was continued, it was not negligence for him to throw on the air suddenly, was properly refused, as omitting the feature that no emergency existed.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 620; Dec. Dig. ☞253(9).]

13. APPEAL AND ERROR ☞1050(1)—REVIEW—HARMLESS ERROR.

The erroneous admission of evidence is harmless, where similar evidence of more forcible character is admitted without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157; Dec. Dig. ☞1050(1).]

14. APPEAL AND ERROR ☞1048(1)—REVIEW—HARMLESS ERROR.

A nonresponsive answer of a witness is not prejudicial, where merely cumulative of other testimony to the same general effect, received without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140, 4144; Dec. Dig. ☞1048(1).]

In Error to the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Action by Merlin E. Guile against Dudley E. Waters and others, receivers of the Pere Marquette Railroad Company. There was a judgment for plaintiff, and defendants bring error. Affirmed.

T. S. Parker, of Detroit, Mich., and C. E. Ward, of Grand Rapids, Mich., for plaintiffs in error.

S. A. Anderson, of St. Paul, Minn., for defendant in error.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

KNAPPEN, Circuit Judge. The Pere Marquette Railroad Company is a railway carrier engaged in interstate and intrastate commerce, its railroad being operated by plaintiffs in error as receivers. While in the latter's employ as rear brakeman on a freight train running between Plymouth, Mich., and Grand Ledge, Mich., which train carried both intrastate and interstate freight, defendant in error (whom we shall hereafter call plaintiff) received, in the course of switching operations, serious injuries alleged to be due to the negligence of another member of the train crew, and on account of these injuries recovered verdict and judgment under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65, amended April 5, 1910 [36 Stat. 291, c. 143]).

Plaintiffs in error (hereafter called defendants) not only assign error with respect to proceedings upon the trial, but insist here, as they did in the court below, that plaintiff's right of action under the federal Employers' Liability Act is taken away by the Michigan Workmen's Compensation Act (Act No. 10, P. A. Mich. [Ex. Session] 1912) and the proceedings had thereunder before this suit was begun.

[1-3] In our opinion in Grand Trunk Railway Co. v. Knapp, 233 Fed. 950, —— C. C. A. ——, decided June 30th last, the question of the relation of the Michigan statute to the federal Employers' Liability Act, and the applicability of the Michigan act to injuries suffered by employés of interstate railroad carriers received careful consideration and discussion; and we there reached and announced the conclusion that, in view of the paramount jurisdiction of Congress over interstate commerce, and thus over remedies against employers therein for injuries sustained by employés while in such commerce, the federal Employers' Liability Act provides the exclusive remedy for at least negligent injuries to employés of interstate railroad carriers while actually engaged in interstate commerce. We found it unnecessary to decide, and intimated no opinion on, the question whether the state act would apply had the injuries occurred without the employer's negligence. We held that Knapp's injuries were suffered while employed in interstate commerce, and affirmed recovery therefor. We refer to our opinion in the Knapp Case for a statement of the reasons for the conclusions there reached, as well as for a synopsis of the important features of the Michigan statute. The defendants here previous to the accident filed their election to come under the act. Plaintiff, however, had never previous to the accident accepted the act, unless by his failure to give written notice of his nonassent. As the train on which plaintiff was working contained cars loaded with interstate freight, plaintiff was engaged in interstate commerce within the meaning of the federal Employers' Liability Act, notwithstanding the train in question ran only between points in the same state. N. Y. C. R. R. Co. v. Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298. The views announced in the Knapp Case, and the reasoning on which those views are based, require us to hold that the federal act provided

the exclusive remedy for plaintiff's injuries at the time they were suffered, if occasioned by defendant's negligence, and that the Michigan act was not made applicable thereto by plaintiff's failure to give notice of his nonassent to the act.

[4] The instant case contains, however, a feature not found in the Knapp Case: Two days after the accident plaintiff's wife applied at the office of the State Industrial Accident Board, where the Michigan Compensation Act was explained to her, and where she signed a claim expressed to be under the act, and later notices addressed to the railroad company, claiming compensation under the act, were, at her request, made out ready for signature. Both copies of the notices were signed by plaintiff. One copy was sent to defendants; the other was returned to the Industrial Accident Board. Defendants took up the matter through their representative and prepared a proposed agreement for settlement, upon the basis of the section of the act applicable to plaintiff's claim as drawn. (The claim in fact did not state the full extent of plaintiff's injuries.) Plaintiff knew, at least from what defendants wrote him, that the Michigan Compensation Act fixed compensation on the basis of average weekly wages for a stipulated number of weeks, and that defendants wished, or at least were willing, to settle with him under that law and on that basis. His failure to settle was due to a dispute as to the amount of compensation to which plaintiff was entitled—the point of disagreement, at least in the first place, being the amount of average wages. Because of this dispute as to the amount of compensation plaintiff brought this suit. We assume, for the purposes at least of this review, that plaintiff knew he had applied for compensation under the state act. No settlement was in fact carried out, or even agreed upon, nor was arbitration asked for. Defendants insist that by this action plaintiff elected to come under the Michigan Compensation Act, and that the transaction amounted to an agreement to adjust all liability under the provisions of that statute, which provides for arbitration in case of disagreement between employer and employé, with right of review by the Industrial Accident Board of the arbitrator's findings.

As between two inconsistent remedies, the deliberate choice of one ordinarily constitutes an election as against the right to claim under the other; and we assume that, had plaintiff the option of proceeding under either the Michigan Compensation Act or the federal Employers' Liability Act, what he did amounted to an election which would bar suit under the federal act. Bomgardner v. Zilch, 19 Ohio Cir. Ct. R. (N. S.) 438. But election presupposes a choice of remedies, and where there is but one remedy available there can be no choice of remedies, and an unsuccessful pursuit of an inapplicable remedy would not bar resort to a remedy that is applicable. Brown v. Fletcher, 182 Fed. 963, 105 C. C. A. 425.

It is established by the verdict that plaintiff's injuries were occasioned by defendants' negligence, and the trial court properly held that those injuries were suffered during plaintiff's employment in interstate railroad transportation. The federal act thus provided

plaintiff's sole and exclusive remedy for his injuries.[1] His mere claim under the Michigan act, not prosecuted to recovery, was thus not an effective election as against a remedy under the federal act. In reaching this conclusion we lay out of account the suggestion of plaintiff's counsel that the record does not affirmatively show that when plaintiff filed the claim for compensation he knew that the train on which he was working carried interstate freight, and that it does not affirmatively appear that he knew he had a right of action under the federal act.

We have no doubt that it was competent for the parties to make a settlement, after the accident, upon the basis provided by the Michigan Compensation Act. Indeed, such adjustment, as eliminating the question of defendants' negligence might well have been regarded by both parties as desirable. The question comes, we think, to this: Whether what was done after the accident amounted to a settlement which would bar proceeding under the federal statute.

No settlement was in fact reached. The proceeding in legal effect amounted, at the most, to an implied agreement (in case adjustment should not be reached between the parties) to arbitrate their differences, employing for the purpose the machinery of the act. But such voluntary agreement to arbitrate, not carried into effect, did not amount to a settlement, nor did it bar resort to applicable remedy at law, unless by what was done plaintiff is estopped therefrom.

[5] There is, we think, no room for estoppel, unless in the fact that defendants provided "medical and hospital services and medicines" for plaintiff during the first three weeks after the injury, which defendants were by section 4, part 2, of the act required to do. But while defendants showed that payments for such purposes (aggregating nearly $300) were made under approval of the legal department, by reason of plaintiff's claim for compensation under the act (which claim reached that department about a month after the accident), yet it does not appear that defendants have been legally prejudiced by the payment; for not only is it not shown that defendants were not already directly obligated to the persons furnishing such services and medicines, but had plaintiff paid the bills in question defendants' liability for his injuries, as found by the verdict, would naturally include the payments in question (plaintiff was in the hospital six weeks in all) and theoretically plaintiff's recovery has been lessened by the amount thereof.

[1] Section 1, part 6, of the Michigan act provides that if an "employé * * * of any employer subject to the provisions of this act files any claim with or accepts any payment from such employer, * * * such action shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury." Aside from the consideration that the Legislature could not thus restrict the remedy afforded by the federal act, we think the section referred to manifestly intended to apply only to employés who are, by the terms of the act, made subject to it. It also seems clear that plaintiff has not become bound under section 4, part 6, of the act, quoted in our opinion in the Knapp Case, as that section requires actual agreement between employer and employé and approval thereof by the Industrial Accident Board, and such agreement was never actually reached, nor was such approval had.

[6] We do not overlook the fact that plaintiff's signed account of the accident given defendants' representative six days later expressed the opinion that no one was to blame for the accident, and that the negligence alleged in his letter refusing defendants' offered adjustment was not that asserted here. But while these statements seriously discredit plaintiff's testimony, as to the fact of the asserted negligence, they do not, we think, legally estop him from such assertion—even assuming (which we do not decide) that the Michigan act would apply to plaintiff's injuries if nonnegligent. It cannot be that an untrue assertion of fact necessary to jurisdiction of the remedy sought legally estops one from invoking a different remedy, which under the actual facts is exclusive.

[7] The question of plaintiff's credibility was addressed to the jury, and its conclusion in that respect is not reviewable here.

We therefore think plaintiff was not, by what was done under the Michigan act, barred, as matter of law, from asserting a right of action under the federal act.

Turning to the proceedings on the trial:

[8, 9] The train on which plaintiff was working at the time of the accident contained 32 cars; the engine being at the west end, the caboose at the east end, of the train, which was equipped with air brakes. The accident happened in connection with the kicking of the caboose onto another track. The conductor was on the west platform of the caboose, prepared to pull the pin when sufficient momentum should be obtained. Plaintiff, as rear brakeman, was on the top of the box car next to the caboose, for the purpose of giving signals to the engineer. As the train was on a curve, the engineer could not see plaintiff's signals, and accordingly the head brakeman stood upon the top of a car near the front end of the train for the purpose of repeating plaintiff's signals. Plaintiff alleged that during the rearward movement of the train he continued the kicking signal by moving his lantern slowly crosswise of the car, and when the proper point was reached gave the signal for the "service" or gradual stop, but that the engineer instead made the "emergency" or sudden and violent stop, by which plaintiff was thrown from the car and under the train. The conductor's testimony tended to corroborate that of plaintiff. The declaration as originally filed charged in effect that the engineer was at fault in making an emergency stop in response to a service stop signal. The head brakeman and the engineer testified on defendants' behalf, the former that he received from plaintiff first the signal for the service stop and soon afterwards the emergency stop signal, and that he transmitted both to the engineer, who testified to having received both from the head brakeman. At the conclusion of the testimony plaintiff asked, and was permitted, to amend his declaration by alleging negligence in the head brakeman in giving the engineer a signal not received from plaintiff. Error is assigned upon this action. The amendment filed was by way of a second count to the effect stated.

The rule is well settled that an amendment to meet the proofs is within the sound discretion of the trial judge. Hernan v. American

Bridge Co. (C. C. A. 6) 167 Fed. 930, 934, 93 C. C. A. 330; Mitchell v. Toledo, etc., R. R. Co. (C. C. A. 6) 197 Fed. 528, 534, 117 C. C. A. 24. And this discretion should not be disturbed unless plainly abused. We think no abuse of discretion is shown. Defendants could not have been misled by the amendment, for it was made to meet proofs which they themselves had submitted; and even a variance between pleading and proofs is immaterial unless such as to mislead the opposite party. Pennsylvania Co. v. Whitney (C. C. A. 6) 169 Fed. 572, 578, 95 C. C. A. 70; Erie R. R. Co. v. Kennedy (C. C. A. 6) 191 Fed. 332, 335, 112 C. C. A. 76; Pennsylvania Co. v. Cole (C. C. A. 6) 214 Fed. 948, 950, 131 C. C. A. 244; Southern Ry. Co. v. Gadd (C. C. A. 6) 207 Fed. 277, 279, 125 C. C. A. 21.

True, plaintiff had testified that the head brakeman repeated the signals given by plaintiff and gave no others, and his testimony in that regard was inconsistent with the claim, added by way of amendment, that the head brakeman did give the engineer a signal not communicated by plaintiff; but it was competent for the jury to believe that plaintiff told the truth as to the signals he gave, that the engineer and the head brakeman told the truth as to the giving by the latter of two different signals, and to have found plaintiff mistaken, or even untruthful, in his testimony that the head brakeman gave only the signals plaintiff had given. The verdict is at least consistent with such view. The fact that the transaction occurred in the nighttime, and that the service signal differs from the emergency signal only in the rapidity with which the lantern is swung, may in some measure account for the confusion. The situation is essentially the same as if the declaration had originally contained two counts, one addressed to the negligence of the engineer, the other to that of the head brakeman. Plaintiff's testimony upon one theory would not bar recovery upon the other, provided there was testimony sustaining such other theory; for upon either theory (and thus upon either count) "the parties were the same, the occurrence was the same, the injury and the damages were the same, and in both cases the negligence charged was that of the company."[2] The Brown Case referred to below is more or less analogous to the instant case, in that the injury there complained of occurred in a movement of the same general nature as that here involved, and there was in that case a question as to which member of defendant's switching crew was negligent. In that case the controversy centered about the allowance of an amendment to the petition charging the negligent act to be that of a different employé than charged in the original declaration; the amendment was sustained against the objection that it introduced a new cause of action, and so was barred by the statute of limitations. As there said by Judge Severens:

"In both cases the negligence charged was that of the company. It was not an action by the plaintiff against either the conductor or the engineer."

[2] Language of Judge Severens in Brown v. Erie R. R. Co., 176 Fed. 544, 545, 100 C. C. A. 132.

And, later, that:

"In an action against the principal, the negligence of the servant is not of itself a substantive factor, except as it is contemplated as the negligence of the principal."

The contentions that plaintiff is shown to have occupied a dangerous position on the car, that his testimony is unworthy of credence, and that two applications of the brakes fairly appear, presented questions of fact, whose existence did not forbid the exercise of discretion in favor of the amendment. The fact that in the instant case the right of action was not at the time the amendment was allowed barred by the statute of limitations, and thus if the instant suit had been dismissed a new suit could have been maintained upon the declaration as amended, seems to us not without force as affecting the exercise of discretion by the trial judge.

[10, 11] There was testimony that plaintiff's proper and safe position on top of the car was about the middle of the running board, facing in the direction the train was moving, and that he was not in such position at the time of the accident. Defendants offered two requests on this subject, Nos. 6 and 7, which are printed in the margin,[3] and error is assigned upon their refusal. It will be noted that in neither request is the question whether plaintiff's position was in fact negligent left to the jury. The sixth, in substance, is to the effect that if plaintiff's position on the car contributed to his injury he must be found to be negligent; and the gist of the seventh requested instruction is that plaintiff knew his proper position was in the middle of the car, facing east, and there was no evidence of any occasion for him to take any other position, and that as it conclusively appears that he could have properly performed his work in the position stated, then if by standing nearer the end and by facing otherwise than in the direction the car was going his injury was contributed to, he was negligent. The jury was thus instructed:

"Was this plaintiff guilty of negligence? The defendants claim that he was. The defendants claim that he was negligent in the manner of standing upon the car, in the place upon the top of the car where he was standing. Defendants claim that he was standing too near the rear end of the car for safety. Defendants also claim that he was not standing in the proper position upon the car for safety at that time, and that his own carelessness in that regard contributed to or caused his injury. That is for you to say, taking into consideration all the circumstances and conditions surrounding

---

3 "(6) If the position of the plaintiff upon the freight car at the time of the accident contributed to his injury, then it is your duty to find that his own want of care did contribute to his injury and he would be chargeable with contributory negligence."

"(7) It is conceded by the plaintiff that he knew the proper position for him upon the freight car was in the middle of it, facing east. There is no evidence of any occasion for him to take any other position. It conclusively appears he could properly have performed his work in that position, and if by standing nearer the rear end of this car than he would be if standing in the middle of it or by not facing east in the direction the car was going he, by reason of either or both of these facts, contributed to his own injury, then he is chargeable with contributory negligence within the meaning of the law and it will be your duty to so find."

this plaintiff at the time of his injury, and taking into consideration all of the evidence in the case."

The court thus clearly submitted to the jury the questions whether plaintiff was negligent either in the manner in which he stood on the top of the car and in the location, as being too near the end. No exception was taken in any respect to the charge as given.

In view of this charge, no error was committed in refusing the requested instructions unless the undisputed evidence as to plaintiff's position and attitude was such that the jury was permitted to find a position concededly negligent in fact to be not negligent in law; for, except in that contingency, the giving of the instructions in question would have amounted to a charge that plaintiff was guilty of contributory negligence in standing in the location and in the position he claims to have occupied. Plaintiff testified:

"I should think the proper place for a brakeman when he is obliged to ride on top of a freight car is near the middle of the car, to avoid the possibility of any sudden jolt and throwing him from the end of the car. I was within five or six feet or three or four feet from the middle."

He also testified that just before the fall he was—

"standing lengthwise of the car, my left hand towards the engineer—my left side. I did not turn around just before I fell. I did not turn around facing more to the engineer so the head brakeman could see my lantern. I don't recall turning around that way. I didn't want to get so far from the end of the car but what I could see when the caboose got far enough out so as to swing him down. The brakeman gets in the middle of a freight car when riding it, so he will stand a show to catch his balance if they misuse him with the air. The reason for that is, if he falls, he won't get over the end of the car."

While plaintiff testified that he did not have much control of his balance "in the way that train stopped," he expressly stated, "I was in a position to have control of my balance." And while the conductor testified that the proper place for plaintiff would have been in the middle of the car, and facing the way the train was going, because in case of a sudden stop he is thereby "apt to fall on the top of the car and catch himself," he qualified that by saying that there would be no danger in his standing on the running board within four or five feet from the end of the car (in which position the conductor thought plaintiff was standing the last time he saw him) "if the engineer handles his train in an ordinary and customary manner"; adding that:

"When an emergency stop is made a train running at the speed this train was, and stopped as I observed the manner of stopping this train, I do not believe if I stood in the middle of the car I would stay on."

The jury was thus at liberty to find that plaintiff was within three or four feet of the center of the car, that he was not facing the engineer, but was standing with one foot in each direction. We are not prepared to say that such position was negligent as matter of law, under undisputed testimony. We find nothing in the charge warranting the interpretation that the jury was permitted under it to find plaintiff free from negligence if he was actually standing four or five feet from the end of the car. But no request for instruction upon that specific question was presented, and in the absence of such re-

quest we think there was no reversible error in failing to instruct upon it.

[12] Error is also assigned upon the refusal to give defendants' eighth request, which we print in the margin.[4] It will be seen that the pith of this requested instruction is that if after the service application of the brakes, which slowed up the train and permitted the way car to run beyond the rest of the train, the plaintiff gave and continued the stop signal while the train was moving a stated distance, it was not negligent for the engineer to apply the remaining air suddenly. There was testimony that the air remaining after its partial exhaustion by making a service application was not enough to make a strictly emergency application. But if we assume that plaintiff's testimony did not deny that both the service and emergency applications were made, in the face of testimony later referred to, yet the record is not such as to conclusively establish that the making of a stop so sudden and violent as to throw plaintiff from the car was a necessary and prudent application, in view of the testimony on plaintiff's part; for the conductor testified that "there was no emergency of any kind requiring the stopping of the train," meaning presumably the emergency stop, also that he should "call the stop that was made at that time an emergency stop"; and it will be seen that the requested charge, if given, if not amounting to an instruction to that effect, would at least be improper as overlooking the feature referred to. We think it was not error to refuse this request.

We have discussed at length only what seem to us the more important questions arising out of the proceedings on the trial. We have, however, carefully considered all the remaining assignments, and are of opinion that there was at least no prejudicial error in respect to the matters at which the several assignments are aimed.

[13] We think the criticized limitation of the purpose for which Exhibit V was admitted was at least nonprejudicial, in view of the later admission, without limitation, of Exhibit W, which was more forceful evidence than Exhibit V. We also think that prejudice from the criticized remark of counsel as to Exhibit W is too improbable to afford basis for reversal; it not appearing in what connection the remark was made, or that it was open to suggestion that defendants had anything to do with plaintiff's application to the relief association.

[14] We also think that the nonresponsive answer of the conductor could not well have been prejudicial, as it was merely cumulative of

---

[4] "(8) If the plaintiff, after giving the 'kick' signal, so called, and while the train was being moved backward in response to that signal, and just before the way car separated from the freight car on which plaintiff was riding, plaintiff gave the stop signal and in response to that signal, or for any other reason, there was a service application of the air brakes which retarded the speed of the train and allowed the way car to run away from the rest of the train, and while the brakes were in that condition the plaintiff gave a stop signal and continued to give it while the train moved one and a half car lengths, it would not be negligence under the undisputed testimony in the case, for the engineer to supply the remaining air suddenly; and if you find that this is what was done by the plaintiff and the engineer, I instruct you that this was not negligence on the part of the engineer and your duty is to render a verdict of no cause of action."

testimony to the same general effect, from the same witness, received without objection.

The judgment of the District Court is accordingly affirmed, with costs.