CAREY v. GRAND TRUNK WESTERN RAILWAY CO.

1. INTERSTATE COMMERCE — MASTER AND SERVANT — FEDERAL EM-
PLOYERS' LIABILITY ACT—RAILROADS—JURISDICTION.
   The decision of the Supreme Court of the United States
   that the entire subject of the liability of interstate railway
   carriers for the death or injury of their employees while
   employed in interstate commerce is completely covered by
   the Federal employers' liability act (35 U. S. Stat. 65)
   is controlling in Michigan, rendering inapplicable the pro-
   visions of the Michigan workmen's compensation act in
   such cases. New York Cent. R. Co. v. Winfield, 244 U. S.
   147.

2. MASTER AND SERVANT — WORKMEN'S COMPENSATION LAW — AC-
CEPTANCE OF ACT—INTRASTATE COMMERCE.
   Where claimant's husband, a conductor, was accidentally
   killed while in charge of a freight train composed exclu-
   sively of cars containing interstate shipments, an award
   of compensation under the Michigan workmen's compen-
   sation law was unauthorized, the Federal employers' lia-
   bility act (35 U. S. Stat. 65) having exclusive jurisdic-
   tion, notwithstanding defendant railroad company had filed
   its acceptance of the Michigan act, since it would apply
   to cases arising in intrastate commerce only; defendant
   being engaged in both interstate and intrastate commerce.

Certiorari to Industrial Accident Board. Submit-
ted October 16, 1917. (Docket No. 154.) Decided
February 19, 1918.

Anna Carey presented her claim for compensation
against the Grand Trunk Western Railway Company
for the accidental death of her husband in defendant's
employ. From an order awarding compensation, de-
fendant brings certiorari. Reversed.

W. A. Geer and R. R. Weaver (H. Geer and W. K.
Williams, of counsel), for appellant.

John B. McIlwain, for appellee.

STONE, J. This case is before this court upon cer-
tiorari to the industrial accident board. The record
contains the proceedings had before the committee on

arbitration, and an appeal from its decision to the industrial accident board.

The defendant and appellant is a common carrier railroad corporation, engaged in the business of intrastate and interstate commerce in this State and elsewhere. On July 11, 1916, Timothy J. Carey, while in the service of said railway company as conductor of a freight train, composed exclusively of cars containing interstate shipments, consisting of freight from Chicago and elsewhere outside of this State, to points within and beyond this State, and consignments received at various points in Michigan, and destined for points beyond its boundaries, sustained an injury by tripping and falling over a semaphore wire, strung along the railroad track at the Lansing, Mich., station, from which injuries it was claimed that consequences developed causing his death on November 9th following.

The appellant in September, 1912, had filed with the industrial accident board of Michigan a written statement to the effect that it elected to accept the provisions of the Michigan compensation act, which was approved by the board, and the company was permitted to carry its own risk. After the death of Mr. Carey, his widow, Anna Carey, presented a claim against the railway company, seeking an adjustment of the matter according to the terms of the Michigan workmen's compensation act. The appellant declined in writing to settle the claim as presented, upon the ground that Mr. Carey, at the time of the accident, was engaged in interstate commerce. The plaintiff thereupon filed an application for adjustment of claim, and a hearing was had before an arbitration committee under the said act. The evidence introduced by both parties disclosed that Mr. Carey, and the railway train upon which he was employed as conductor at the time of the accident, were engaged in interstate

commerce. The committee awarded compensation, and an appeal was taken to the board, which found that Mr. Carey was engaged in interstate commerce at the time of the accident, and further that the award of the committee on arbitration should be affirmed, and entered an order accordingly.

In this court appellant relied upon the proposition that the accident upon which plaintiff's claim is based did not occur within the jurisdiction covered by the Michigan compensation act, and the question is raised by proper assignments of error. It is urged by appellant that the Michigan workmen's compensation act, by its own terms, expressly excludes cases of this nature from adjudication by the industrial accident board. Section 4, pt. 6, of Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5491), reads as follows:

"The provisions of this act shall apply to employers and workmen engaged in intrastate commerce, and also to those engaged in interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, except that any such employer and any of his workmen working only in this State, may, subject to the approval of the industrial accident board, and so far as not forbidden by any act of congress, voluntarily accept and become bound by the provisions of this act in like manner and with the same force and effect in all respects as is hereinbefore provided for other employers and their workmen."

It is also urged by appellant that this record fails to disclose the existence of a contractual obligation purporting to require adjustment of the present claim upon the basis of the Michigan act, but that, did one exist, it would be quite unenforceable, as opposed to all the principles announced by the Federal decisions,

and the following cases are cited: *Grand Trunk R. Co.* v. *Knapp,* 233 Fed. 950; *Waters* v. *Guile,* 234 Fed. 532; *New York Cent. R. Co.* v. *Winfield,* 244 U. S. 147 (Am. & Eng. Ann. Cas. 1917D, 1139) ; *Erie R. Co.* v. *Winfield,* 244 U. S. 170. In the *Knapp Case* Judge Knappen, referring to the section of the Michigan statute above quoted, said:

"By section 4, part 6, of the act, its provisions are made to apply to employers and workmen engaged in intrastate commerce, but not to those engaged in interstate commerce, 'for whom a rule of liability or method of compensation has been or may be established by the congress of the United States,' except to the extent that 'their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce.' There is also provision for express and voluntary acceptance of the act by 'any such employer and any of his workmen working only in this State,' if done with the approval of the industrial accident board."

The position of the plaintiff is stated in the supplemental brief of her counsel as follows:

"At the time the workmen's compensation act was passed the Federal employers' liability act had been in force four years, by which the employer was liable to the employee in an action at law for all injuries received in the line of employment as the result of negligence chargeable to the employer, and in which the common-law defenses of fellow servant, contributory negligence and assumption of risk were taken away. Under this act, however, negligence was essential to recover, and in all cases where negligence could not be shown the employee was without remedy. This was not deemed a sufficient measure of justice to employees. The unquestioned intent and purpose of the legislature in enacting the workmen's compensation law was to provide a remedy for all injured employees, which legislation was prompted by a universal public demand that such a measure of compensation should be provided, and the cost of it should be borne by the employer the same as any other expense incurred in carrying on his business. Congress had taken a step

in that direction, but it was restricted and inadequate. With the intent and purpose of providing moderate compensation for all injured employees the workmen's compensation law was enacted leaving it optional, however, with the employer to accept or reject its provisions as he saw fit. The liability of the employer under the Federal act was then an existing remedy for a limited class of cases, but one over which the legislature had no power, or control whatsoever. Any legislation enacted by the State must be in subordination to it."

In our opinion the question before us is settled by *New York Cent. R. Co.* v. *Winfield, supra,* unless a distinction can be made between the New York workmen's compensation act (Consol. Laws, chap. 67) and ours. In that case the United States Supreme Court held that the entire subject of the liability of interstate railway carriers, for the death or injury of their employees, while employed by them in interstate commerce, is so completely covered by the provisions of the Federal employers' liability act of April 22, 1908, as to prevent any award under the New York workmen's compensation act, where an employee was injured or killed without fault on the railway's part, while he was engaged in interstate commerce, although the Federal act gives the right of recovery only, when the injury results in whole or in part from negligence attributable to the carrier. In other words, it was there held that by the Federal act, congress manifested its will to cover the whole field of compensation or relief for injuries suffered by railroad employees engaged in interstate commerce, or at least the whole field of obligation of carriers relating thereto; and that it thereby withdrew the subject wholly from the domain of State action.

The doctrine announced is that by the Federal legislation employees of an interstate railroad company are not within the purview of a State workmen's com-

pensation act. This doctrine is reiterated in the *Erie R. Co. Case.* There the New Jersey statute was under consideration. The question presented included whether, by reason of the State statute, the carrier became bound contractually to make compensation, even though it came within the Federal act. Speaking of that statute the court said:

"Unless  *  *  *  a notice from one party to the other contain 'an express agreement in writing,' to the contrary, it 'shall be presumed' that the parties 'have agreed to be bound' by this part of the statute. There was no express agreement in this instance and there is no basis for regarding the carrier as in any way bound by this part of the statute save as it provides that an agreement to be bound by it shall be presumed in the absence of a declaration to the contrary. But such a presumption cannot be indulged here, and this for the reason that by the Federal act the entire subject, as respects carriers by railroad and their employees in interstate commerce, was taken without the reach of State laws. It is beyond the power of any State to interfere with the operation of that act, either by putting the carriers and their employees to an election between its provisions and those of a State statute, or by imputing such an election to them by means of a statutory presumption."

But it is said that the workmen's compensation act of New York, being compulsory upon the employer, renders the *Winfield Cases* inapplicable here. We are unable to agree with this contention. The Michigan act applies to intrastate transportation. It was not therefore inconsistent with its present contention for the Grand Trunk Western Railway Company to accept the provisions of the Michigan compensation act. Many cases might arise in intrastate business where the workmen's compensation act would apply. *New York Cent. R. Co.* v. *White,* 243 U S. 188 (L. R. A. 1917D, 1 Am. & Eng. Ann. Cas. 1917D, 629), was such a case. There it was held that White was en-

gaged in intrastate commerce. It was said that the test was:

"Was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?"

And that question was answered in the negative, and the State board's award was affirmed.

In *New York Cent. R. Co.* v. *Winfield, supra,* Justice Brandeis, in an exhaustive dissenting opinion, covers the field of police regulation. We speak of this to show that the whole subject was before the court and was considered in all aspects. The doctrine of the majority opinion is that the action of congress was paramount and exclusive of State action. We call attention to the phrase, "and so far as not forbidden by any act of congress," contained in section 4 of the Michigan act, above quoted. May it not be said that congress by occupying the field by its legislation has thereby forbidden the States to legislate upon the subject? In the language of Justice Van Devanter:

"In such a case, the legislation of congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any further legislation to act upon the subject-matter. Its silence as to what it does not do is as expressive of what its intention is as the direct provisions made by it."

In this view there is no conflict between the State and Federal legislation; and we can agree with counsel for the plaintiff that:

"The whole scheme of the workmen's compensation act discloses an intent on the part of the legislature to avoid invasion of the Federal jurisdiction or any conflict with the Federal law, and to keep within the scope of legislative authority. And it must be presumed that the legislature did not intend by the language used to abrogate, nullify, suspend, or to in any manner interfere with the liability created by the Fed-

eral law.  It must be presumed it did not intend to do that which it had no authority to do."

This court has spoken upon the general proposition that the Federal employers' liability act is exclusive and paramount in regulating the relations of employers and employees engaged in interstate commerce. *Fernette* v. *Railroad Co.*, 175 Mich. 653, 674; *Gaines* v. *Railway Co.*, 181 Mich. 376; *Holmberg* v. *Railway Co.*, 188 Mich. 605.  In our opinion the *Winfield Cases* are as controlling under the Michigan workmen's compensation act as under the New York act, and that they settle conclusively for all American jurisdictions the question that employees of an interstate carrier, engaged in interstate business, are not within the jurisdiction of the State workmen's compensation acts.

It follows that the order of the industrial accident board must be reversed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.