## HETTRICK MFG. CO. v. JAMES A. SHEPHERD & CO.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1924.)

No. 3838.

**1. Pleading ⬮➾430(2)—Question of variance held immaterial where not raised in trial court.**

Where an issue was presented by the evidence and no question was made as to the sufficiency of the pleadings to present it, in which case they would have been amendable, it was properly submitted to the jury.

**2. Sales ⬮➾88—Construction of contract properly submitted to the jury.**

Where an order for goods to be manufactured was given and accepted through correspondence, which, however, must be construed in view of previous transactions between the parties, its construction was properly submitted to the jury.

**3. Evidence ⬮➾498—Computation of damages held admissible.**

An itemized computation of damages recoverable on plaintiff's theory for breach of contract by defendant to deliver goods bought was not inadmissible because of testimony tending to impeach the basis on which some of the items were computed, but all such evidence was for consideration by the jury.

**4. Appeal and error ⬮➾1002—Court cannot weigh the testimony on which verdict was rendered.**

The appellate court cannot weigh conflicting testimony on which a verdict was rendered.

**5. New trial ⬮➾76(1)—Motion is addressed to discretion of court.**

A motion for new trial on the ground of excessive verdict is addressed to the sound discretion of the court.

In Error to the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by James A. Shepherd & Co., a corporation, against

the Hettrick Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

John E. Daniells and Ira C. Taber, both of Toledo, Ohio (Taber & Daniells, of Toledo, Ohio, on the brief), for plaintiff in error.

Benjamin T. Batsch, of Toledo, Ohio (Rathbun Fuller, of Toledo, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Defendant in error (hereinafter called plaintiff) is a corporation organized under the laws of Great Britain and doing business at Glasgow, Scotland. Plaintiff in error (hereinafter called defendant) is an Ohio corporation, doing business at Toledo in that state. It is undisputed that on or about July 23, 1915, defendant's predecessor, a manufacturer of cotton duck, to whose obligations defendant has succeeded, contracted with plaintiff, which had a contract with the British government for wagon covers, for the sale and delivery to plaintiff of 83,500 yards of 38-inch cotton duck at 39 cents per yard f. o. b. New York, plus freight, insurance, and other charges, the goods to be delivered and paid for in cash, less 3 per cent.; against shipping documents. Plaintiff claims that the contract, which was by correspondence, provided for delivery in weekly installments of 5,500 to 6,000 yards; the first installment to be delivered as soon as possible, and not later than 40 days after July 10, 1915. Defendant denies the installment-delivery feature. On or about December 2, 1915 (four or five months after the contract was made), the first installment, of about 3,740 yards, arrived in Glasgow and was received and paid for by plaintiff. About seven days later the remainder of the goods, amounting to 79,842 yards, arrived in Glasgow, and defendant thereupon attempted to deliver to plaintiff the entire amount, demanding payment therefor in advance. Plaintiff claims that thereupon, with a view of meeting the unexpected situation created by the arrival of the entire remaining order without notice, plaintiff and defendant entered into a "new supplementary agreement," whereby the goods should be placed in storage and removed therefrom within a period of four months from December 17, 1915, in lots of 5,500 yards or thereabouts, upon the tender from time to time by plaintiff on the delivery of each lot of the original price of 39 cents per yard, plus the proper proportion of freight, insurance, and similar charges. About five days later plaintiff received and paid for one installment lot of 5,105 yards, and on December 30, 1915, defendant sold to another customer the entire remainder of the goods at a substantial advance. It denies the alleged supplemental agreement. In this suit for damages for failure to deliver the balance of the goods according to the alleged contract, the special verdict of the jury negatived the unconditional making of the claimed agreement of December 17, 1915, but by its general verdict of $13,788.31 in favor of plaintiff necessarily found that the contract of July 23, 1915, contemplated installment deliveries substantially as claimed by plaintiff.

Defendant contends: First, that plaintiff's cause of action asserted by its petition is for breach of the agreement of December 17th, that

plaintiff's testimony established the making of that agreement, which thus abrogated and took the place of the first contract, and thus that, even if plaintiff had based its action on the first agreement (July 23d), it could not have recovered because of fatal variance between pleading and proof; second, that even if plaintiff's cause of action is upon the original agreement, the same was not an installment contract, the evidence establishing it was not in conflict, and its construction should thus have been determined by the court and not submitted to the jury; third, that there was error in the charge as to the damages; and, fourth, that certain evidence was erroneously admitted.

[1] 1. We are unable to agree with defendant's first contention, in view of the allegations in the petition and the facts, either undisputed or which the evidence tended to prove as hereinbefore and hereinafter stated. It was fairly inferable that the petition was intended to charge that the alleged supplementary agreement was made only for the purpose of saving the situation resulting from defendant's breach of its original agreement, under which supplementary agreement the amount ultimately to be delivered as well as the price were unchanged, the amount of each delivery being substantially as in the original contract. The differences were that the average time between deliveries was shortened,[1] and plaintiff, as more definitely stated in the testimony, was to pay the storage and interest on the value of the stored goods and to drop the 3 per cent. discount. It is true only in the most technical sense that the original contract can be said to have been abrogated by the supplementary agreement. The petition, so far from alleging such abrogation, treated the arrangement of December 17th as supplementary to the existing contract. We are disposed to think the trial judge rightly construed the petition (as he seems to have done) as treating the original contract not as superseded, but as modified in certain respects. But, however this may be, we think the judge was amply justified in submitting the case on whichever theory should be found by the jury to accord with the facts. If the supplementary agreement was not made, plaintiff ought not forever to lose the right to recover under the original contract (if actually made as plaintiff asserted and as the jury found), merely because plaintiff had mistakenly labeled the supplementary agreement. The contentions of both parties, as regards both the terms of the original contract and the making of the supplementary agreement, had been fully tried out under issues joined thereon. There could have been no room for a claim of surprise with respect to testimony, and the question of variance was thus immaterial. Waters v. Guile (C. C. A. 6) 234 Fed. 532, 538, 539, 148 C. C. A. 298.

There had been no request by defendant for a directed verdict, nor for instructions to the jury. Had the question of the sufficiency of the petition for submission on both theories been thus formally presented, the court would not only have had the right, but it would have been its duty, to allow an amendment to meet the proofs already in (intro-

---

[1] The first shipment left defendant's mills October 19th, or about two months after the first delivery should have been made under the alleged original contract.

duced under the issues joined), either by the addition of a count on the original contract alone or otherwise, and thus save the necessity of another trial. Pennsylvania Co. v. Whitney (C. C. A. 6) 169 Fed. 572, 95 C. C. A. 70; Spitzer v. Trustees (C. C. A. 6) 267 Fed. 121, 129. We think the court had such right in the interest of justice, even without plaintiff's request. That it did not deem such amendment necessary does not alter the ultimate situation.

[2] 2. Defendant's asserted right to abrogate the contract for plaintiff's failure to accept and immediately pay in full for the remainder of nearly 80,000 yards, tendered on or about December 9th, turned upon the meaning of the original contract with reference to deliveries. We are unable to agree with defendant's contention that the so-called "official order," hereinafter set out, clearly and unambiguously provided merely for delivery within a reasonable time of the entire amount in one installment. The contract was negotiated between plaintiff and one Parker, a "manufacturers' agent," doing business in London, and who in this transaction represented defendant at least as a broker, whatever his relations with plaintiff as to its contract with the government may have been. An earlier contract between plaintiff and defendant, for a smaller amount, was under negotiation through Parker when the contract here in suit was first considered. As early as June 23 (1915) Parker wrote plaintiff regarding this other order, and noting that he had not yet had final decision on the "large order which you had hoped to secure." In that letter Parker states, "We could give delivery there of 5,000 yards weekly, beginning in about five weeks." This latter statement apparently referred to the smaller contract. On July 16th plaintiff, by letter, gave Parker an order for the 83,500 yards here in question, promising to give the "delivery dates" therefor "with our official order in a day or two," and asking Parker to "cable about both orders, as delivery is most urgent." The next day Parker cabled defendant that he had *"orders to place* 85,000 yards" of the specifications involved here,[2] and on July 20th cabled again that he had made the sale to plaintiff "for another British government contract." On July 21st defendant wrote Parker its receipt of cable that he had sold Shepherd 85,000 yards of the specifications and at the price in question, and that it had cabled Parker the entry of Shepherd's order, adding, "Our mills are in excellent position to give good very large deliveries weekly on this, and in the meantime you will give us shipping instructions so we will know how to ship this." On July 22d Parker wrote plaintiff that defendant had entered plaintiff's order for the goods here in question and at the price, adding, "I must have the official order per return so as to cable to hold this price good." Accordingly, on July 23d plaintiff gave the "official order" by telegram, addressed to the defendant in Parker's care, at London, as follows:

"83,000 yards of R. D. three 38 inches at 39 cents per yard, [3] less three per cent. cash against shipping documents. This confirms order cabled by

---

[2] All italics in this opinion ours.

[3] The mention of "83,000" yards is plainly error. Not only was the original order for 83,500 yards, but defendant's answer admits the contract was for 83,500 yards.

you and accepted in your letter of yesterday's date. You write to say every-thing possible must be done to expedite delivery, as the covers are urgently required by the government. Not less than 5,500 yards are required per week by the government. Delivery urgent."

On this same day Parker had written defendant that he hoped to receive the official order "to-morrow or early next week," and on the next day cabled the defendant, "Delivered Shepherd's official order 83,500 yards 38 roll three earliest possible 6,000 weekly," and on the same day wrote plaintiff acknowledging receipt of "official order for cotton duck," its confirmation "by cable to-day," and that he had "asked our people to hurry on delivery of about 6,000 yards weekly, commencing as quickly as ever possible."

We agree with the trial judge that the so-called "official order," standing alone, was not so far a completed contract embodying the full understanding of the parties on that subject, nor its language upon its face so clear and definite as to enable the court to construe it in that regard as matter of law. Naturally the meaning of the "official order" must be interpreted in view not only of the negotiations by correspondence between plaintiff and Parker with reference to the instant contract, but also of their negotiations with reference to the other contract or contracts between them. Parker, who presumably was familiar with terms and usages in the trade in question, testified that it was clearly his understanding when the contract was made that it called for installment deliveries of not less than 5,500 yards per week, and that he "conveyed that understanding to his principals," presum-ably meaning that the written correspondence between the latter and himself (not all of which is set out in this opinion) so meant; that he asked for 6,000 yards weekly so as to get 5,500 yards, and more if pos-sible; also, that he could not conscientiously have accepted an order for plaintiff for 83,500 yards to be paid for in a lump, as he believed it beyond plaintiff's ability to pay that right down. The record con-tains no suggestion that defendant regarded this testimony incompe-tent or inadmissible, provided Parker was plaintiff's agent.[4] We think there was no error in submitting to the jury the question whether the original contract contemplated installment deliveries as claimed by plaintiff. Empire Fuel Co. v. Lyons (C. C. A. 6) 257 Fed. 890, 895, 896, 169 C. C. A. 40. If the contract so contemplated, whether the weekly delivery was to be 5,500 or 6,000 yards, defendant had no right to rescind in December.

3. We see no merit in the contention that defendant's alleged letter to Parker of July 21 (Exhibit 8—P) was admitted erroneously, because unsigned, unidentified, and unauthenticated. It would be enough to say that we are cited to no exception to the admission of the letter, and error is not assigned thereon. It was presumably included in the *"copy of extracts from letters* passing between the witness Parker and his principals [defendant] * * * marked Exhibit 8 of Productions

---

[4] Not only is error not assigned upon its admission, but the only objection made was that "it is not shown that he [Parker] is the agent of this company [defendant] further than his own declaration that he is an agent." The ob-jection was properly overruled.

in the Commission" (Parker's testimony was taken by Commission). The record contains reference to several of these exhibits, marked respectively 8–a, 8–b, 8–c, etc., some in connection with the narrative of the witness, others in a list of separately printed exhibits contained in the bill of exceptions, in respect to none of which does the signature seem to be given. We find not even an objection to the admission.

[3] Nor do we find error in the admission of the computation of plaintiff's damages, prepared by its auditor, and which included, in addition to the difference between the contract price and that paid by plaintiff for the same number of yards of a narrower width of cloth, the cost of extra yardage occasioned by inability to get 38-inch goods, the cost of added labor in making up the narrower goods bought, the money paid to other manufacturers for making up certain of the covers, due to the alleged urgency in filling the government contract on account of delay in obtaining material, as well as extra cartage in connection with such manufacture by others. There was evidence tending to furnish basis for each of the alleged items of damage, including advance in market price, inability to obtain duck of the contract width, unavoidable delay in obtaining the cloth to be used, and plaintiff's claim that the price paid was not materially, if at all, in excess of the market price at substantially the time of defendant's alleged breach. The existence of testimony tending to dispute the basis of certain (or even all) of such items did not render the statement inadmissible as a computation on plaintiff's theory. The charge of the court unequivocally left to the jury the determination of each of the alleged items. The claim to mistake or discrepancy in respect to certain mathematical computations was also, upon this record, merely matter for the jury's consideration.

[4, 5] 4. It follows from what we have said that the criticisms upon the court's charge as to the measure of damages are not well taken. The asserted excessiveness of verdict is not upon this record subject to review. We cannot weigh the testimony. Burton v. United States, 202 U. S. 373, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392; Kelly v. United States (C. C. A. 6) 258 Fed. 392, 169 C. C. A. 408. The motion for new trial on that ground was addressed to the sound discretion of the court. Robinson v. Van Hooser (C. C. A. 6) 196 Fed. 620, 627, 116 C. C. A. 294. In his opinion denying the motion for new trial the judge said that "a verdict for a sum substantially larger would have been fully supported by the testimony."

Taking into account interest for about six years, properly allowed by the court, the verdict apparently is substantially below the basis on which plaintiff's computation before referred to was made. We have no reason to think the discretion vested in the trial judge has been abused, or that defendant has been denied a fair trial.

In the opinion of a majority of the court the judgment of the District Court should be affirmed.