# APRIL TERM, 1910.

GRAND RAPIDS & INDIANA RAILROAD CO. *v.* CHEBOYGAN CIRCUIT JUDGE.

1. ATTORNEY AND CLIENT — COMPENSATION — LIEN BY SPECIAL AGREEMENT.

By a writing executed by the plaintiff, in a personal injury case, to his attorneys, providing that they should have a lien upon the amount of any judgment or settlement obtained by the client of fifty per cent. of the same, a lien for the attorney's services is created for half the judgment or settlement, if the contract is made in good faith; and an assignment to the extent of their lien is thereby obtained, preventing a discharge of the claim to the prejudice of such lien by settlement between the parties to the action, provided the defendant has notice of the special agreement.

2. SAME—LIEN—JUDGMENT.

Except by special agreement no lien exists prior to judgment.

3. SAME—NOTICE—SUFFICIENCY.

A letter of the attorneys notifying the defendant of the existence of a lien is sufficient to put the latter upon notice.

4. SAME—RIGHT TO COMPENSATION.

A discharge of a cause of action obtained under circumstances which ought to put the party on inquiry as to the claim of plaintiff's attorneys in the case, for a lien, is void as to the attorneys as it would be after actual notice of their rights.

5. SAME—NOTICE.

Notice of a lien on the amount of any settlement obtained is equivalent to notice of a special agreement, without specifying the exact terms of the contract.

6. SAME—AGREEMENT FOR LIEN—SETTLEMENT BY CLIENT.

In a contract for an attorney's lien, which provides that in case the client does not recover a judgment or obtain a settlement the attorneys shall receive no compensation, the right of the client to compromise his action is recognized.

(181)

7. SAME—LIEN—ENFORCEMENT—PRACTICE.

In order to enable the attorneys to proceed in the original suit to recover their fees under the agreement, it is necessary to have the stipulation of settlement and discontinuance set aside or stricken from the files.

8. SAME—COMPROMISE AND SETTLEMENT.

The defendant may thereafter prove the compromise agreement at the trial of an issue framed.

9. ASSIGNMENTS—CAUSE OF ACTION—SURVIVAL.

An action for injuries to the person which survives is assignable for the purpose of creating an attorney's lien.

10. ATTORNEY AND CLIENT—ENFORCEMENT OF LIEN — PROCEDURE AFTER COMPROMISE.

The lien is enforceable by proceeding in the case upon the formation of the proper issue, to recover the amount of attorney's fees, upon a petition showing the agreement and the consequent claim.

11. SAME—PLEADING—PROCEDURE — PLEA PUIS DARREIN CONTINUANCE.

The defense of settlement made after suit brought may be presented in a plea *puis darrein continuance* filed to the petition.

12. SAME—TRIAL OF ISSUE AS TO LIEN.

On the trial plaintiff's attorneys must show the making in good faith of the special agreement, defendant may prove the compromise agreement and the settlement in accordance therewith, and the attorneys will thereupon be entitled to recover in plaintiff's name the amount of their fees as shown by and based upon the compromise agreement: while a failure to show the compromise and settlement made on it, will entitle the attorneys to prosecute the original suit; or failure to show the alleged agreement for a lien will defeat the cause of action.

13. MANDAMUS—AFFIDAVITS—FINDINGS.

On motion to discontinue a cause on the ground of a compromise, and on a counter motion to strike the settlement agreement from the files, the findings of the circuit judge, without framing an issue, that the agreement of a plaintiff for a contingent fee and lien of his attorneys is binding, and that a compromise was made fraudulently without the consent of plaintiff's attorneys, is reversed on mandamus as unwarranted where the findings were made upon affidavits.

Mandamus by the Grand Rapids & Indiana Railway

Company to compel Frank Shepherd, circuit judge of Cheboygan county, to vacate an order setting aside a settlement of an action at law.    Submitted April 5, 1910. (Calendar No. 23,862.)    Writ granted in modified form April 25, 1910.

*James H. Campbell*, for relator.

*Benjamin & Quay* (*De Vere Hall*, of counsel), for respondent.

Stone, J.    The case of *Foley* v. *Railway Co.*, was before this court in 157 Mich. 67 (121 N. W. 257).    Another phase of the case was before the court in *Grand Rapids, etc., R. Co.* v. *Cheboygan Circuit Judge*, 159 Mich. 210 (123 N. W. 591).    The original suit was brought by Foley to recover damages for personal injuries.    Plaintiff recovered a verdict and judgment for $10,000, which judgment was reversed, and a new trial ordered in the case first above cited, May 26, 1909.    Thereafter, and on December 22, 1909, the relator effected a settlement of Foley's claim for damages.    The agreement of settlement, and the memorandum agreement made contemporaneously are as follows:

"State of Michigan.
"In the Circuit Court for the County of Cheboygan.

"James Foley,
      "Plaintiff,
            v.
"The Grand Rapids & Indiana Railway Company,
      "Defendant.

"I, James Foley, plaintiff in this cause, do hereby acknowledge the payment to me by the Grand Rapids & Indiana Railway Company of the sum of five thousand one hundred forty dollars, in full settlement and satisfaction of all claims, demands, damages, and cause of action which I now have or might hereafter have against said railway company on account of personal injuries sustained by me on or about the 9th day of September, 1906, at

Kegomic, Michigan, when I was run over when getting off a train on which I had ridden from Petoskey. The suit begun by me against the said railway company, and now pending in said circuit court, is hereby discontinued and dismissed without costs to either party, and an order accordingly shall be entered on filing this stipulation.

"Dated, December 22, 1909.

"JAMES FOLEY.

"Witnessed by
"B. T. HALSTEAD,
"JOHN FOCHTMAN.

"STATE OF MICHIGAN, ⎱ ss.:
"COUNTY OF EMMET, ⎰
"On this 22d day of December, 1909, before me, a notary public in and for said county of Emmet, personally appeared James Foley, to me personally known, and known to me to be the same person named in and who signed the foregoing instrument and acknowledged that he had executed the same of his own free act and deed.

"B. T. HALSTEAD,
"Notary Public in and for Emmet County, Michigan.
[Notarial Seal.]
"My commission expires February 17, 1913."

"Memoranda of agreement made and concluded, this 22d day of December, A. D. 1909, by and between James Foley of Kegomic, Mich., party of the first part, and the Grand Rapids & Indiana Railway Company, a corporation, party of the second part.

"The said party of the second part as part consideration for settlement, this day made by and between the parties hereto, hereby covenants and agrees with said first party to pay to the attorneys of said first party as compensation for their fees and disbursements for and on behalf of said first party, an amount not to exceed the sum of one thousand dollars ($1,000).

"In witness whereof the said parties aforesaid have hereunto set their respective signatures in duplicate the day and year above written.

"G. R. & I. RY. Co.,
"By C. W. JONES."

The law firm of Benjamin & Quay had been the attorneys of record for Foley, and had tried the case in the circuit, and had argued the cases in this court. They

claim to have had a written agreement with said Foley, made before suit was brought, in the words and figures following:

"This agreement made and entered into this 17th day of February, 1908, by and between James Foley of Petoskey, Michigan, of the first part, and Benjamin & Quay, of Cheboygan, Mich., of second part:

"Whereas, said first party has this day retained second parties as attorneys to begin suit against Grand Rapids & Indiana Railway Co., a corporation, for personal injuries received by said first party during September, 1906, it is hereby agreed that said second parties, as their fees, shall receive one-half of whatever judgment or settlement they shall obtain from said railroad company, and in case first party does not recover judgment or obtain a settlement, then second parties shall receive no pay for such services as they may render in said cause; and second parties shall have a lien on any judgment or money that may be obtained from said railroad company. First party to pay all witness fees, second party all other clerk and county fees.

"James Foley.        [Seal.]
"Benjamin & Quay.    [Seal.]"

It is undisputed that on June 11, 1909 the said attorneys for Foley wrote and mailed a letter to James H. Campbell, general counsel for relator, relating to a rumored attempt of relator to effect a settlement of Foley's claim with him direct, in which the following language was used:

"Also we wish to notify you that we have a lien upon any money which Mr. Foley may obtain, either by judgment or settlement, for our services rendered, and in case your company settles direct with Mr. Foley without our knowledge or consent, we shall have to hold you responsible for the amount of our fees."

It is conceded that Mr. Campbell received this letter by due course of mail, and replied to the same on June 25, 1909. Again, on November 27, 1909, De Vere Hall, Esq., who had been employed to assist Messrs. Benjamin & Quay in the retrial of said cause, wrote a letter to Mr. Campbell, in which he said, among other things:

"I am advised that your claim agent called upon the plaintiff and offered to pay him $5,000.00 in full settlement of his claim, telling him that if he accepted this amount he would be under no obligations to pay his attorneys anything, and that it would be as much as he would get out of it if he obtained another judgment for $10,000.00, and that if he did not accept, the case would be dragged along in the courts for the next four or five years. I am also advised that another offer of $6,000.00 is to be made to him by some of your claim agents, and I write you this that you may be advised of the situation.

"It is apparent from the record of the former case that the attorneys for Mr. Foley have been representing his interests faithfully, and that they are entitled to full consideration, and I presume that it will be unnecessary to give the matter of attempted settlement any further consideration by them, and that if they are rightly advised, your claim agents will deal only with such attorneys.

"I have no doubt that the attorneys for Mr. Foley have an arrangement with him under which they are to be paid a portion of the sum secured, either by settlement or by suit, and that the proposed settlement, if effected, except through them, would ignore their rights entirely.

"Will you please give this matter your earliest attention and advise me."

On November 30, 1909, Mr. Campbell replied to this letter, and said in part:

"It has always been my practice to deal only with attorneys in cases placed in their hands. * * * In writing Benjamin & Quay I made an offer of settlement, and wrote that if we could agree upon an amount, I would let judgment be entered for that sum, and pay it into court, or to the attorneys direct. We had some correspondence.

"They wanted $10,000, and later wrote that they would take $9,000, if paid within fifteen days. I wrote them that the company would not pay that, and asked them if they had any better offer to make. That was about four months ago. I have had no reply.

"I have had no thought of doing anything that would deprive Benjamin & Quay of a fee in the case. Our claim agent has been in Petoskey several times within the last month or six weeks upon other matters. I said nothing to him about the Foley case and he tells me that

he had nothing to say about it when he was there, and did not see Foley.

"I am still willing to make a reasonable settlement of the case; and shall be glad to have you say what in your judgment should be paid by the company upon a settlement. My own view of it is that if $3,500.00 was paid to Foley, and $1,000 to Benjamin & Quay, with $500 to you, making $5,000 in all, it would be about right."

On December 10, 1909, Benjamin & Quay wrote Mr. Campbell referring to the correspondence between Mr. Hall and Mr. Campbell, and stating that they would accept $10,500, and nothing less, and that Mr. Campbell could have 20 days in which to take the matter up with the company. This seems to have ended the correspondence upon the subject of a settlement. Thereafter the case was settled with Foley as above set forth. On January 3, 1910, the said attorney for the railroad company paid into said court said $1,000, and the clerk's fees, and caused notice of a motion to dismiss said cause without costs to either party, to be served upon the said attorneys for said Foley, based upon the said settlement agreement which had been filed in said cause and the affidavit of James H. Campbell. Said motion was to be heard before the respondent on January 7th. Whereupon the said Benjamin & Quay, as attorneys for said Foley, served and filed a counter motion to have the said settlement agreement and stipulation for discontinuance stricken from the files of said cause, and for an order permitting said plaintiff's attorneys to proceed with the trial of this cause for the purpose of determining what amount of fees they were entitled to. Said motion was noticed to be heard before the respondent at the same time and place as defendant's motion. Said motion of plaintiff's attorneys was based upon the records and files in the cause, and the affidavit of Maxwell W. Benjamin, which is set out in this record. Affidavits of James H. Campbell and C. W. Jones were read in opposition to the motion of said plaintiff's attorneys. They also appear in this record.

The said two motions were heard by the respondent at

the same time, and were considered together.  After the hearing of said motions, and on January 7, 1910, the said respondent made a finding and order substantially as follows:

(1) He found that the said Benjamin & Quay, attorneys for said plaintiff, James Foley, had a legal and existing contract for their compensation and fees to be paid them by plaintiff, for their services and expenditures in said cause, and that said agreement constituted a lien of 50 per cent. upon any judgment or settlement that the said Benjamin & Quay might obtain for said plaintiff, in said cause.

(2) That the said defendant had due and legal notice of said special contract for services, and the said lien of said Benjamin & Quay.

(3) That the settlement, made direct between James Foley, plaintiff, and the defendant, was collusive, and made with the intent to defraud said Benjamin & Quay, plaintiff's attorneys, out of their just and legal costs, expenditures, and fees, to which they would have been lawfully entitled if settlement of said cause had been made through them, or if they had proceeded with the trial of said cause and obtained a judgment.

(4) It was ordered that the said motion of defendant for an order dismissing said cause be denied.

(5) It was further ordered that the said stipulation of settlement and discontinuance, dated December 22, 1909, and filed in said cause December 27, 1909, be stricken from the files in said cause.

(6) It was further ordered that Benjamin & Quay, attorneys for plaintiff, be permitted to proceed with the trial of said cause in the name of James Foley, plaintiff, for the purpose of determining the amount of their fees, under and by virtue of their special contract with said James Foley.

After a motion to vacate the above order was duly made and denied, the relator filed this petition for mandamus.  It prays that the writ of mandamus issue to the respondent, requiring him to vacate and set aside the said order of January 7th, and to enter an order withholding an order dismissing the case until the claim of plaintiff's attorneys against the defendant for their services and dis-

bursements shall be presented in some proper form, and tried and determined and satisfied.   The respondent has answered said petition, and the matter has been argued in this court, and many authorities have been cited by counsel for the respective parties.   An examination of the questions involved satisfies us that most of them have already been ruled upon by this court.

1. We are of opinion that the agreement of date February 17, 1908, by and between Benjamin & Quay and James Foley is upon its face a valid agreement between the parties, and, if made in good faith, constituted a lien of 50 per cent. upon any judgment that might be recovered, or upon any settlement that might be made of the plaintiff's claim in said cause, and operated as an assignment to said attorneys of any judgment or settlement, to the extent of their said lien, and that the plaintiff could give no valid discharge of the claim to the defendant therein to the prejudice of the lien of said attorneys in said fund; provided defendant, relator here, had notice of such lien.   We think that this view is fully supported by the following decisions of this court: *Weeks* v. *Wayne Circuit Judges*, 73 Mich. 256 (41 N. W. 269); *Carpenter* v. *Myers*, 90 Mich. 209 (51 N. W. 206); *Heavenrich* v. *Alpena Circuit Judge*, 111 Mich. 163 (69 N. W. 226); *Simon* v. *Pack*, 115 Mich. 669 (74 N. W. 185); 1 Jones on Liens (2d Ed.), §§ 43, 62, 223, 224. Of course we recognize the rule that in this State there would be no lien before judgment, except by special agreement.

2. Did the defendant in that suit, relator here, have notice or knowledge of said lien ?   It will be borne in mind that Benjamin & Quay in their letter to Mr. Campbell, of date June 11, 1909, said:

"We wish to notify you that we have a lien upon any money which Mr. Foley may obtain, either by judgment or settlement, for our services rendered, and in case your company settles direct with Mr. Foley without our knowledge or consent, we shall have to hold you responsible for the amount of our fees."

In our opinion this was sufficient notice to put the defendant in that suit upon inquiry. *Weeks* v. *Wayne Circuit Judges, supra; Jackson, etc., R. Co.* v. *Davison,* 65 Mich. 449 (37 N. W. 537).

In *Young* v. *Dearborn,* 27 N. H. 324, it is held that, if a party obtains a discharge of an action under such circumstances as ought to have put him on inquiry as to the claim of the attorney, the discharge will be void as to the attorney as it would be after actual notice of his lien. If the party defendant acts in the face of circumstances which are sufficient to put him on inquiry, he acts contrary to good faith, and at his peril. Defendant knew that plaintiff's attorneys could have no lien before judgment, except by express agreement. We think that notice of lien on amount of settlement was equivalent to saying there was an agreement. It was not necessary that plaintiff's attorneys should apprise the relator of all and the exact terms of their special contract in order to put it upon inquiry.

What would have been the effect had plaintiff's attorneys served a copy of their agreement of February 17, 1908, upon the defendant, relator? A careful examination of such agreement will show that there is nothing in its terms to prohibit Foley from settling his case with the defendant. It says:

"It is hereby agreed that said second parties, as their fees, shall receive one-half of whatever judgment or settlement they shall obtain from the said railroad company, and in case first party does not recover judgment, or *obtain a settlement, then second parties shall receive no pay for such services as they may render in said cause;* and second parties shall have a lien on any judgment *or money* that may be obtained from said railroad company. First party to pay all witness fees, second party all other clerk and county fees."

We think that here is a clear recognition of the right of Foley to settle said cause, but not to the prejudice of the lien of one-half thereof. In their letter to Mr. Campbell of June 11, 1909, Benjamin & Quay say:

"We wish to notify you that we have a lien upon any money *which Mr. Foley may obtain, either by judgment or settlement,* for our services rendered, and in case your company *settles direct with Mr. Foley without our knowledge or consent,* we shall have to hold you responsible for the amount of our fees."

Manifestly, there is nothing here to prohibit a direct settlement with Mr. Foley, but there is notice that defendant will be held responsible for the amount of the attorneys' fees.

3. We agree with respondent's counsel that, in order for them to be able to proceed in the original suit for the purpose of recovering their fees under their agreement, it was necessary for them to have the stipulation of settlement and discontinuance set aside, or stricken from the files. *Potter* v. *Hunt,* 68 Mich. 242 (36 N. W. 58); *Kittridge* v. *Railway Co.,* 53 Mich. 354 (19 N. W. 32). This does not interfere with defendant's right to prove its agreement at the trial. Foley's cause of action was one that would survive upon his death, and he had a right to assign an interest in it. We have already discussed the terms of that agreement. They were consistent with his right to settle the case, but not to the prejudice of his attorneys' agreement for fees.

4. We have no doubt that the proper and better practice is for the plaintiff's attorneys to proceed in the cause, upon the forming of a proper issue, to recover the amount of their fees. This is an adequate remedy, and seems to be supported by the decisions in this State, already cited upon the first point, and by the great weight of authority in other States. While it has been severely criticised as illogical and clumsy, yet it has been upheld. In *Miedreich* v. *Rank,* 40 Ind. App. 393 (82 N. E. 117), the court, in speaking of the practice, said:

"This procedure has been designated as clumsy, and it has been said that it was a device of the courts, not of the legislature, and sprang from the necessity of providing some remedy against fraudulent settlements. The neces-

sity is no less at this time in Indiana than it was in England years ago, when the procedure was first followed."

In our opinion the proper practice will require the plaintiff's attorneys in said suit to present to the court in proper form, by petition or otherwise, their alleged agreement and their claim thereunder. The defendant in that suit will, under Circuit Court Rule 9, be permitted to give notice of its alleged settlement agreement, in the nature of a plea *puis darrein continuance.*

(*a*) Upon the trial it will devolve upon the plaintiff's attorneys to show that their agreement with Foley was duly made, and was in good faith.

(*b*) It will devolve upon the said defendant to prove the making of the alleged settlement agreement with Foley, and that the settlement was made in accordance with its terms.

(*c*) Should both agreements be established by evidence, plaintiff's attorneys will be entitled to recover, in the name of said plaintiff, the amount of their fees as shown by their said agreement with Foley, upon the basis of said settlement.

(*d*) Should the said plaintiff's attorneys establish their agreement with said Foley as valid and binding, and should the defendant fail to show the making of said settlement agreement, and a settlement with Foley thereunder, then and in such case the plaintiff's attorneys will be permitted to prosecute the said original action, and prove the plaintiff's case, as though there had been no attempted settlement, and recover their contract share of any damages awarded.

(*e*) Should the plaintiff's attorneys fail to prove and establish as *bona fide* their alleged agreement with said Foley, then they will not be entitled to recover any sum whatever.

It follows logically from what we have already said, that the finding of the respondent, marked above "1," wherein he found that the agreement of said plaintiff's attorneys with said Foley was legal and binding, should

be vacated and set aside.   The finding above marked "3," wherein the respondent found that said defendant's alleged settlement agreement with said Foley was collusive, and made with the intent to defraud said plaintiff's attorneys, should also be vacated and set aside.   Both of said findings were made upon affidavits, and were unauthorized.   The statements contained in the affidavit of Maxwell W. Benjamin are largely hearsay, and such findings were not warranted by any evidence.   *Voigt Brewing Co.* v. *Wayne Circuit Judge,* 103 Mich. 190 (61 N. W. 343).

That part of said order, marked above "6," will be so modified as to permit an issue to be framed as above indicated.   The remainder of said findings and order will stand.   We have examined with care the authorities cited by counsel, but we refrain from quoting them here, for the reason that we find authority for the course here indicated in our own decisions.

The writ will issue in the modified form above indicated, but without costs.

MOORE, McALVAY, BROOKE, and BLAIR, JJ., concurred.