## NICHOLS v. WATERS.

1. JUDGMENT—RES ADJUDICATA.

    A judgment of the Federal court, that, at the time of the service of process in that case, plaintiff had no right of action because she had settled her claim, was not *res adjudicata* as to a claim of plaintiff's attorneys for a contingent fee, of which defendants had notice.

2. MASTER AND SERVANT—COMPROMISE AND SETTLEMENT—FEDERAL EMPLOYERS' LIABILITY ACT—MICHIGAN WORKMEN'S COMPENSATION ACT.

    That the Federal employers' liability act (35 U. S. Stat. 65) is paramount and exclusive in its jurisdiction as to the relations between interstate railway carriers and their injured employees, is no bar to the claimant and employer making a settlement by mutual agreement, after an accident to an interstate employee, upon the basis provided by the Michigan workmen's compensation act, or upon any other basis agreeable to them.

3. TRIAL—EVIDENCE—SUFFICIENCY—ISSUE — BREACH OF CONTRACT —CONTINGENT FEE.

    Evidence that plaintiffs first breached a contract providing for a contingent fee, by not caring for the funeral expenses of the deceased, *held*, insufficient to raise an issue of fact.

4. ATTORNEY AND CLIENT—CHAMPERTY—CONTRACTS — CONTINGENT FEE.

    In Michigan, contracts with attorneys for contingent fees with a lien on the amount recovered, either by settlement or judgment, are valid, and, after proper notice, the opposing party is obligated to recognize the same at his peril.

5. SAME—COMPROMISE AND SETTLEMENT—CONTRACTS—PUBLIC POLICY—INVALIDITY.

    An agreement by a client with his attorney prohibiting the former from settling pending litigation without the attorney's consent is void as against public policy.

6. SAME—THIRD PARTIES—DEFENSES.

    Third parties, sought to be held liable under such agreement for compensation in the matter to which the agreement relates, may avail themselves of its invalidity.

7. SAME—CONTRACTS—CONTINGENT FEE.

Where plaintiffs' contract with claimant, providing for a contingent fee, provided that they were to receive nothing unless claimant recovered more than the amount payable under the workmen's compensation act, and she settled with the employer on the basis of the act, without plaintiffs' consent, they were not entitled to recover, in an action against the employer, being precluded by the terms of their contract.

8. SAME—CONTRACTS—DIVISIBILITY—VOID PROVISION.

If the void agreement not to settle without consent of the attorneys was a part of the consideration for the whole contract, or so modified its other provisions that they could not stand with the void provision stricken out, it was not divisible, and the whole contract was void.

Error to Kent; Perkins, J. Submitted October 12, 1918. (Docket No. 100.) Decided March 28, 1918.

Assumpsit by George E. Nichols, Arthur F. Shaw and Edward P. Whitney, copartners as Nichols, Shaw & Whitney, against Dudley E. Waters and Paul H. King, receivers of the Pere Marquette Railroad Company, and others for attorneys' fees. Judgment for defendants on a directed verdict. Plaintiffs bring error. Affirmed.

*George E. Nichols* (*A. F. Shaw* and *James K. Nichols*, of counsel), for appellants.

*Parker, Shields & Brown* (*Charles E. Ward*, of counsel), for appellees.

STEERE, J. Plaintiffs constitute a law firm engaged in practice of their profession in the city of Grand Rapids. Defendants Waters and King were at the time of these proceedings receivers of the Pere Marquette Railroad Company. Defendant Kuiper was its claim attorney and Sandy his assistant.

On December 1, 1913, Thomas A. Holmes, a young man 26 years of age and unmarried, sustained fatal

injuries in a head-on collision on said railroad at a curve between Lowell and Elmdale in this State resulting from a mistake in running orders. He was employed as a brakeman, and then serving as one of the crew of an extra freight engaged in interstate commerce. December 29, 1913, his mother, Mrs. Margaret C. Holmes, was appointed and qualified as his administratrix, and on the same day she served, in her own name, a notice upon the railroad company of a claim for compensation under the Michigan workmen's compensation act at the suggestion of defendant Sandy who furnished her with blanks. Some unsuccessful negotiations for settlement were thereafter had and on February 2, 1914, she entered into a contract with plaintiffs, signed by her as "administrator of the estate of Thomas Holmes, deceased," by which she retained them on a contingent fee as her attorneys in the matter of her claim arising against the railroad company out of her son's death "with full authority to act in the matter, and conduct all negotiations of settlement, bring suit or take such action in the premises as they may deem best," it being provided that in case of recovery by suit or settlement she would pay them and they would accept in full for their services one-half of the amount recovered, but if nothing was recovered they would charge her nothing for their services, with the following qualifications and provisions:

"That in case said second parties shall not recover more than first party would have received under the employers' liability law, then and in such case said first party shall receive the amount which she would receive under said law.

"That said second parties agree to protect said Margaret Holmes from claims against said estate for burial expenses, etc., until this case shall be either settled or terminated.

"It is further agreed and understood between the

parties hereto that neither party shall compromise or settle said claim without the consent of the other party hereto.

"It is agreed that said second parties shall have a lien upon any and all money received by reason of said claim for the amount of their services."

On the same date plaintiffs notified the receivers and claim attorney of the railroad company, in writing, that they had been retained in the case and should bring suit unless it was desired to take the matter up with a view to a settlement, further saying:

"Please take notice that under our contract with Mrs. Holmes we have a lien against the amount she may be paid in settlement and that under our contract any settlement made without our consent is void."

Receipt of this notice was acknowledged by defendants in writing. At this time defendants had offered Mrs. Holmes in settlement of her claim under the compensation act $6 a week for 300 weeks.

On February 19, 1914, plaintiffs commenced suit in behalf of Mrs. Holmes in the United States circuit court for the western district of Michigan under the Federal act to recover damages for the death of her son, at the same time notifying the railroad's claim attorney and receivers of the fact, stating that any settlement of the action without consent of plaintiffs would not be recognized; that they would not consent to any settlement under the employers' compensation act of Michigan, and that they had a lien against any moneys which might be recovered. Subsequent negotiations for settlement between Mrs. Holmes and the claim attorney of the railroad, had without the knowledge or consent of plaintiffs as they claim, resulted in a written agreement of settlement, dated February 24, 1914. For this a prescribed form of the industrial accident board was used, by which the receivers agreed to pay her $9.80 per week during a period of 300

weeks, and, in addition thereto, pay the funeral expenses of her son, his average weekly wages being stated to have been $19.61. This agreement was signed by her as "widow, administratrix and guardian."

On March 10, 1914, the summons issued when suit was commenced in the United States circuit court was served and defendants' appearance was entered on March 25th, after declaration had been served. On May 6, 1914, a motion was made by defendants before the Federal court to dismiss said suit on various grounds, supported by an affidavit of Mrs. Holmes that it was commenced without her authority and against her wishes and she had directed plaintiffs to discontinue it. An opposing affidavit, also sworn to by her, largely negativing the other was presented in opposition. The motion was, after argument, granted and said suit dismissed, the court finding and holding that, irrespective of any question of her desire to discontinue, she had no right of action at the time of service of process upon defendants, as she had then made application for compensation under the State law and before service of the summons, though after commencement of suit, had agreed upon a settlement with defendants, approved by the industrial accident board, received and retained the money paid her thereunder, which she had not offered to return, saying in conclusion:

"The Michigan statute above mentioned expressly and positively required the defendants, who had elected to operate under its provisions, to pay upon proper application the compensation therein provided, and just as positively deprived the plaintiff of any other remedy after making her application."

While the latter conclusion is questioned, the court also squarely found that, at the time of the service of process in that case, plaintiff had voluntarily set-

tled her claim by an executed contract and therefore had no right of action. The judgment of that court standing unreversed ends the issues there decided and precludes inquiry in another court as to whether, at the time of service of process in that case, she was bound, as between her and defendants, by her settlement with them; but we cannot follow defendants' contention that it is *res adjudicata* as to plaintiffs' claim that she originally had a cause of action in which they were retained by a valid contract with her specifying their contingent compensation which defendants, with notice of their claim of lien, were bound to recognize. It is upon that theory this action is brought to recover from defendants the fees which plaintiffs were or would be entitled to from her by virtue of their contract, and defendants by notice of the contract are holden for because they settled with her in disregard of its provisions.

Much is suggested and many complicated questions are debated in connection with the fact that the employee for whose death damages were claimed was at the time engaged in interstate commerce. Of this it may be noted that in view of the rulings and reasons therefor by appellate Federal courts to the effect that by the United States employers' liability act congress covered the subject of liability of railroad companies to their employees while engaged in interstate commerce and granted a paramount power in express terms which occupied the field to the exclusion of State laws and superseded all legislation over the same subject by the States, the conclusion was reached by this court, in *Carey* v. *Railway Co.*, 200 Mich. 12, wherein certain of those decisions are cited and reviewed by Justice STONE, that employees of an interstate carrier while employed in interstate commerce are not within the jurisdiction of our State workmen's compensation act; and because only one remedy was

recognized there could no estopping election of remedies follow an unsuccessful pursuit of an inapplicable one. It was held, however, in *Waters* v. *Guile*, 234 Fed. 532, as competent for the parties to make a settlement by mutual agreement, after an accident to an interstate employee, upon the basis provided by the Michigan compensation act, to which might be added, or on any other basis agreeable to them. Except as these parties may have independently contracted between themselves to adopt some provision of the Michigan act as the basis of computation or measure of their agreement, it is silent in this case and of no more binding force, legal effect or jurisdiction than the code of Hammurabi, which also deals with workmen's compensation. The controlling questions here are the validity, in whole or in part, of the contract for contingent fees between plaintiffs and Mrs. Holmes, and whether by it under the facts shown anything is due plaintiffs from her.

The point is made by defendants that plaintiffs first breached this contract and released Mrs. Holmes from its obligations by not caring for the funeral expenses of her son as agreed in the contract, but we do not find competent testimony to even make that an issue of fact. She loosely complains of their neglect to attend to the matter, as she does of defendants' attorneys and her invalid husband deceiving and coercing her into settling without litigation, of which she says she desired to have the suit, "If I had my own way," but her husband and children at home, "no one else," would not allow her to go on with it and "life became so I couldn't stay at home any longer with them." The contract provides that plaintiffs shall protect her "from claims against said estate for burial expenses, etc., until the case shall be either settled or terminated." She testified they told her all she need do

201—Mich.—3.

was to send the undertaker to them and a member of plaintiffs' firm testified without contradiction that they never refused to pay the bill, nor did the undertaker call upon them, but did once ask about his bill over the telephone and was directed to file his claim in the probate court as was customary and when allowed by the probate court it would be paid.

This is one of the States where, in contravention of the common law, it has been provided by statute that contracts with attorneys for contingent fees with a lien on the amount recovered, either by settlement or judgment, are valid, and, after proper notice thereof, the opposing party is held obligated to recognize the same at his peril. Plaintiffs' suit is based on that proposition, which is fully discussed, with citation of prior decisions, in *Grand Rapids, etc., R. Co.* v. *Cheboygan Circuit Judge*, 161 Mich. 181. Whether any effort was made in the Federal court to have the settlement of which plaintiffs complain set aside and they permitted to proceed with the original case in that court for the purpose of liquidating the amount of and recovering their fees there, we are not advised, although it is stated in plaintiffs' brief that the court refused to pass upon the validity of their contract with Mrs. Holmes. Be that as it may, they began this action in the State court to recover from defendants the fees they would have been entitled to had the case proceeded in that court to a judgment in Mrs. Holmes' favor, claiming the right to prove the amount of such fees by trying, in this action between themselves and defendants, the issue involved in that action between Mrs. Holmes and defendants, and have a jury in the State court decide upon the testimony it heard what a jury in the Federal court upon the testimony there produced would, or should, have decided she was entitled to recover against defendants for her son's death had that case been tried. Other measures of damage

are also proposed should this anomalous course be
deemed inappropriate.

It is conceded that whatever right of action plain-
tiffs might have against defendants arises out of their
contract with Mrs. Holmes relative to fees and de-
fendants' failure to recognize the same after notice
of its provisions. Against this defendants contend
that the stipulation in the contract between plaintiffs,
as attorneys, and Mrs. Holmes, as their client, pro-
hibiting the latter from settling her case without con-
sent of the former is void as against public policy,
and being an inseparable part of the contract vitiates
it in its entirety. On the part of plaintiffs it is urged
that promise by Mrs. Holmes not to settle without
their consent is valid and binding, but if a nullity,
for the reason urged, it is in its nature a supplemental
and severable portion of the agreement which does
not contaminate the whole, which stands as a complete
and enforceable contract after the obnoxious clause is
rejected.

It is conceded that the decisions in other jurisdic-
tions are somewhat at variance upon this question,
which has not been directly passed upon in this State.
While authority may be found indicating the contrary
(*Beagles* v. *Robertson,* 135 Mo. App. 306), we think
the overwhelming weight of authority is in support of
the proposition that any agreement by a client with
his attorney prohibiting the former from settling
pending litigation without the attorney's consent is
void as against public policy. The following cases and
others to which they lead fully discuss the rule and
give convincing reasons in its support which it would
be superfluous to repeat here: *Fischer-Hansen* v. *Rail-
road Co.,* 173 N. Y. 492; *Kansas City Elevated R. Co.*
v. *Service,* 77 Kan. 316; *Greenleaf* v. *Railway Co.,* 30
N. D. 112; *North Chicago St. R. Co.* v. *Ackley,* 171 Ill.
100; *Weller* v. *Railway Co.,* 68 N. J. Eq. 659; *Davis* v.

*Chase,* 159 Ind. 242; *Davis* v. *Webber,* 66 Ark. 190; *Burho* v. *Carmichiel,* 117 Minn. 211; *Howard* v. *Ward,* 31 S. D. 114; *Davy* v. *Insurance Co.,* 78 Ohio St. 256; *Newport Rolling Mill Co.* v. *Hall,* 147 Ky. 598; *Jackson* v. *Stearns,* 48 Or. 25.

That third parties, sought to be held liable under such an agreement for compensation of the client's attorneys in the matter to which the agreement relates, may avail themselves of its invalidity appears to logically follow and is supported by authority. *Davy* v. *Insurance Co., supra; Ingersoll* v. *Coal Co.,* 117 Tenn. 263; *Pennsylvania Co.* v. *Lombardo,* 49 Ohio St. 1.

The provision in restraint of compromise being void, and Mrs. Holmes having a legal right to settle her case with defendants, as she did, the question of whether the void clause in the contract vitiates it in its entirety, as to which the authorities are at variance, becomes unimportant under the facts and agreement as to contingent fees in this case, for her contract with plaintiffs provided that their compensation should be, "in case of recovery by settlement or otherwise, * * * one-half of the amount recovered," and that if they did not recover more than she "would have received under the employers' liability law" she should "receive the amount which she would receive under said law."

It was shown without dispute that deceased lived with his parents and regularly turned over all his wages to his mother, except what the company kept out for meal tickets, that his father was in poor health, his parents were chiefly dependent on him for maintenance of their home, and his contributions for support of the family exceeded half his earnings, entitling her as legal representative of his dependents to one-half his average weekly wages, but not more than ten dollars, * * * for a period of three hundred

weeks from the date of the injury," according to pro-
visions of the State compensation act. Her settle-
ment with defendants was within that limit, aside
from the funeral expenses, which plaintiffs had not
paid but which one of them testified they had agreed
to pay, "to keep her from worrying."

The trial court found that under the undisputed evi-
dence she received no more than the compensation act
would have given her, that the, settlement she made
with defendants upon that basis was one she had a
right to make, was valid and binding between the con-
tracting parties, whether the Federal act was ex-
clusive or not, and directed a verdict for defendants,
"because by the terms of the contract, the plaintiffs
were to receive nothing unless an amount over and
above the amount payable under the employers' lia-
bility act was recovered." Against these conclusions
plaintiffs say that at the time their contract with Mrs.
Holmes was made she had been offered but $6 per
week, that their contract for her minimum was in
reference to that amount, but when she "violated the
terms of her contract by making settlement, that por-
tion of the agreement was no longer binding upon us
because our rights entirely changed," and therefore
they are entitled to one-half the amount she received
in settlement, or at least one-half of what she settled
for in excess of the $6 per week.

Whatever may have been said about the six-dollar
offer, the written agreement into which their negotia-
tions merged, and under which it is attempted to hold
defendants, makes no mention of offers by defendants,
but fixes as a test the measure prescribed by the State
law. Plaintiffs knew what that law provided and that
she had filed her claim under it, and it is to be pre-
sumed they fairly advised her in regard to it. They
claimed she was not estopped, by having elected her
remedy, from an action for negligence in the Federal

court, and, binding her by the contract not to settle without their consent, as they supposed, served notice of the fact upon defendants with warning that any settlement without their consent would be void. But the agreement by Mrs. Holmes upon which they relied was void, and she did not violate any binding terms of her contract by making settlement. The matter of good faith with her attorneys and moral obligations in the transaction are not involved. It may be conceded that this record shows her acts and affidavits were governed largely by who saw her last, and it is evident plaintiffs depended for their protection upon her void written agreement which prohibited settlement without their consent, not upon her fidelity to them or moral responsibility.

The contention that her violation of the void clause in the contract entirely changed the rights of plaintiffs and the relations of the parties so that the otherwise valid provision as to a minimum amount she should recover before any fees were coming to them was no longer binding, only relegates them to the other horn of the dilemma. If the void agreement not to settle without consent of the attorneys was a part of the consideration for the whole contract, or otherwise inseparably related to, modified or contaminated its other provisions so that with that provision stricken out the remainder could not stand as it read, a distinct, valid and enforceable contract, then it was not a divisible contract, the illegality of the objectionable clause permeated and vitiated it in its entirety and rendered the whole contract void.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, BROOKE, STONE, and KUHN, JJ., concurred. FELLOWS, J., concurred in the result. MOORE, J., did not sit.