**H. Donald BRUCE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 1312.**

United States District Court, E. D. Michigan, N. D.

Jan. 20, 1955.

H. Donald Bruce, Saginaw, Mich., pro se.

Fred W. Kaess, Dist. Atty., Detroit, Mich., for defendant.

PICARD, District Judge.

Plaintiff brings action in this court under Section 2410 Title 28 U.S.C. to remove a cloud on the title of some property which he purchased at a circuit court commissioner's sale conducted under the laws of the State of Michigan and by authority of an attorney's lien for services, which lien had been allegedly perfected. Defendant originally filed four income tax liens but at the court's suggestion withdrew all but two since the others ran against the husband alone and the property in question was in the name of the husband and wife. United States v. Nathanson, D.C., 60 F.Supp. 193.

On the other hand defendant wants whatever remedy is available so that the cloud on its own title, resulting from plaintiff's acts, be removed.

Further facts come from the stipulation.

In 1951 plaintiff was attorney for Chester A. and Margaret Decker. A dispute arose and plaintiff filed a lien against property of his clients, in Emmet County. He then learned that there was a prior lien on that property so he removed that lien but got permission from the Circuit Court of Emmet County to file a lien on "any property, real or personal owned by said" Deckers "in the State of Michigan."

October 19, 1951 plaintiff filed such a lien on the property involved herein as provided by law and defendant filed its lien with the Register of Deeds of Crawford County, also, as provided by law, against the same property, for the Deckers' income taxes for the year 1948. The amount was $3,102.90 and the date of its filing was November 1, 1951.

But the assessment against the Deckers had been made long previously and the list of those owing defendant for income taxes including the 1948 tax of Deckers, had been received by the Collec-

tor of Internal Revenue for the Eastern District of Michigan on October 20, 1950.

Incidentally, notice of that lien was filed with the United States Clerk at Bay City, October 31, 1951.

The second lien, in the sum of $1,251.49 for the year 1949, was assessed against the Deckers June 13, 1952 and received by the Collector three days later. Notice was filed with the Register of Deeds, Crawford County, and the United States District Clerk at Bay City, October 22, 1952.

It will be noted that plaintiff's lien was filed with the Register of Deeds of Crawford County before either of defendant's liens but defendant's Collector of Internal Revenue had received the list containing the first lien ($3,102.90) before plaintiff's lien was placed against the property (see Sec. 3671, Int.Rev.Code 1939, 26 U.S.C. § 3671) while the second lien was not even assessed until June 1952.

On December 1, 1952, plaintiff petitioned the Emmet County Circuit Court for a determination of his lien which terminated in the court's action of December 12, 1952. At that time, to-wit, December 12, 1952, the Circuit Court of Emmet gave plaintiff a decree providing that as to the property involved plaintiff had an equitable lien "amounting to a mortgage" in the sum of $5,000 which took precedence over all encumbrances and mortgages filed after October 17, 1951; it also provided for foreclosure thereof any time after June 15, 1953.

Plaintiff filed this suit to clear title September 28, 1953 in Crawford County and defendant removed it to this court.

During the course of this law suit there have been many maneuvers, motions, and attempts and threats of sale but finally by stipulation sale of the property was held by the Circuit Court Commissioner of Crawford County, November 20, 1953, when plaintiff bid in the property as follows: $660 for personalty and $5,000 for realty. No money has ever changed hands or been paid into court.

Defendant admits that if plaintiff's lien of October 19, 1951 made plaintiff a

mortgagee, pledgee, purchaser or judgment creditor he has priority over the tax liens, (Sec. 3672, Int.Rev.Code 1939, 26 U.S.C. § 3672) but it contends that the state court was without power to declare an attorney's lien on the Crawford County property, that plaintiff has no lien at all, and that in any event all plaintiff could have had was an inchoate right that was not perfected until December 12, 1952.

### Conclusions of Law

Dates are important factors herein.

#### Regarding Plaintiff's Lien

Court gave plaintiff permission to file an attorney's lien by order dated ....... Oct. 17, 1951

Plaintiff filed such a lien on Oct. 19, 1951

Plaintiff asked permission to "perfect" his lien ........ Dec. 1, 1952

By court's decree plaintiff's lien perfected ........... Dec. 12, 1952

> Note: The court decree states that plaintiff has an "equitable lien amounting to a mortgage * * * from October 17, 1951."

#### Regarding Government's Liens

Government's first income tax claim against Deckers ($3,102.90) turned over to Collector .............. Oct. 20, 1950

Demand for payment made on Deckers ............ Oct. 23, 1950

Notice of lien for that claim filed with United States Clerk at Bay City, Michigan .................... Oct. 31, 1951

Notice of same also filed with Register of Deeds, Crawford County ....... Nov. 1, 1951

Government's second income tax claim against Deckers ($1,251.49) turned over to Collector .............. Jan. 16, 1952

Lien filed with Register of Deeds Crawford County and United States District Clerk of Bay City ....... Oct. 22, 1952

And several extracts from the Code as well as decisions are likewise important at this point.

■ To begin with it has been held that the effect of a state law lien in relation to a provision of federal law for the collection of debts owed the United States is a federal question. United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53. It will be seen that the basis for this attorney's lien lies only in the common law.

■ Then Section 3671 of the Internal Revenue Code of 1939, supra, provides that a lien shall arise in favor of the government when the assessment list is received by the collector and Section 3672 of said Code amplifies this by providing that no lien is valid as against any mortgagee, pledgee, purchaser, or judgment creditor unless it is filed as authorized by the law of the State (in Michigan-Register of Deeds of Crawford County and United States Clerk of the District.) Therefore when the collector at Detroit was given the list in 1950 a lien arose in favor of defendant which lien ($3,102.90) became perfect when the proper notices were filed with the Register of Deeds of Crawford County and the Clerk of the District Court, November 1, 1951. We will refer to the second lien later.

The question then is did the Circuit Court of Emmett County have the right to make the effectiveness of plaintiff attorney's lien, which was admittedly not perfected until December 1952, retroactive to October 17, 1951, disregarding defendant's first lien that had been filed November 1, 1951?

■■ As above stated, in the State of Michigan there is no statutory law governing attorney liens so they rest entirely upon common law. See Fraam v. Kelley, 268 Mich. 573, 256 N.W. 552, in which the court said that as between an attorney himself and his client the attorney has a lien upon a judgment obtained through the attorney's efforts for services and disbursements *in a partic-*ular case. See also Wipfler v. Warren, 163 Mich. 189, 128 N.W. 178.

In Everett, Clarke & Benedict v. Alpha Portland Cement Co., 2 Cir., 225 F. 931, 937, the court gave a definition of attorney liens in general that has been rather widely accepted. After stating that they are of two kinds "retaining" or "charging," it goes on to say,

"The two liens are different in their nature, and the rules applicable to the one are not necessarily applicable to the other. An attorney's lien on a judgment is not recognized at common law unless declared by statute, but the lien on the papers is. The reason for that distinction is that the common law only recognized liens acquired by possession. Courts of equity, however, recognized the lien on the judgment; possession not being essential to an equitable lien. Again, a special or charging lien on a judgment never extends beyond the costs and fees due the attorney in the suit in which the judgment is recovered, while a general or retaining lien on the papers is not limited to the services rendered in the particular matter in which the papers were received, but includes a general balance due him for services rendered in other suits. And again, an attorney may take active steps to enforce his lien on a judgment, but the lien on the papers is a mere passive lien, without any right to actively enforce it. It is a mere right to retain."

■ In the case at bar, under that definition plaintiff has no general or "retaining" lien because he has no property of his clients in his possession. He also has no "charging" lien because there is no cause of action, judgment, or recovery to which it is claimed such a lien has attached. The Crawford County property so far as we know was not involved in the litigation in which plaintiff rendered his services. Therefore, if we follow defendant's contention

**862**

to its legitimate objective, plaintiff doesn't have a lien today and no authority has been shown how in Michigan he could have a lien against this particular property even though the circuit court said he did have.

Bennett v. Nichols, 12 Mich. 22.

 The question then follows whether or not the decision of the Emmet County court is final. And we hold that the Circuit Court's decree could not be final affecting the United States of America because defendant was not made a party to the December 1952 proceeding although at that time it also had two liens on record. Defendant should have been made a party and had it been it might have appealed from the Circuit Court decree to the State Supreme Court. The mere statement by the county court that plaintiff had a mortgage from October 1951 is not final. In fact it has been held that decisions of even state supreme courts may be scrutinized in matters involving federal tax liens. United States v. Security Trust & Sav. Bank, supra; United States v. Acri, 75 S.Ct. 239.

 This is not a collateral attack. Here it almost appears as though all the parties purposely ignored the federal government on December 12, 1952. In fact the use of the word "mortgage" in the court's decree is rather revealing. Nor have we been shown any Michigan authority, other than Emmet County, giving plaintiff any lien on the property concerned much less an "equitable mortgage" from the day intent to claim lien was filed. This court is not bound by the decree of the Circuit Court of Emmet County. Hochevar v. Maryland Casualty Co., 6 Cir., 114 F.2d 948. And

although we might follow conclusions of an intermediate court such as there are in some states, this court is not bound to do so in any matter—much less one involving a government lien—if it believes that the Supreme Court of the State would hold otherwise. Christian v. Preferred Acc. Ins. Co., D.C., 89 F. Supp. 888.

 Therefore we agree with defendant that to this day plaintiff does not have a choate right or a complete lien against the Crawford County property but regardless of this conclusion certainly all plaintiff could have had on October 17, 1951 and until December 12, 1952, was an inchoate right such as defendant had in United States v. Security Trust & Sav. Bank, supra. That case is directly in point as are United States v. Acri, supra, and United States v. Scovil, 75 S.Ct. 244.

In United States v. Security Trust & Saving Bank, supra, the court held that a tax lien of the United States on certain property in California was prior in right to an attachment lien against the same property obtained under the California Code of Civil Procedure, even though the federal lien was recorded subsequent to the date of the attachment lien but before the attaching creditor obtained judgment.

We hold that defendant's first and second liens are good because at least until December 12, 1952, plaintiff was not a mortgagee, pledgee, purchaser, or judgment creditor so as to come within the exceptions referred to in section 3672, Int.Rev.Code 1939. By December 12, 1952 the government's two liens had been properly recorded and filed.

Judgment for defendant.