MILLER v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 68598. Submitted March 7, 1984, at Grand Rapids.—
Decided December 17, 1984. Leave to appeal applied for.

Jerry Miller was injured in July, 1979, while operating an automobile which was owned by a friend and was insured by Detroit Automobile Inter-Insurance Exchange. No other vehicle was involved in the accident, and neither plaintiff nor any relative in whose household plaintiff was domiciled had automobile no-fault insurance. By a letter dated March 12, 1980, Miller applied to DAIIE for no-fault benefits and submitted proof of certain medical expenses. The letter disclosed that the Sloan, Benefiel & Farrer law firm and Richard G. Stevens were acting as Miller's attorneys. On May 23, 1980, Miller commenced an action in Calhoun Circuit Court against DAIIE, seeking recovery of medical expenses and wage loss benefits. The complaint indicated that Miller was being represented by Sloan, Benefiel & Farrer and Richard G. Stevens. On June 9, 1980, Miller executed an agreement with Sloan, Benefiel & Farrer and Stevens under which the attorneys were to receive a percentage of any recovery from DAIIE as attorney fees. In a letter dated October 23, 1980, the attorneys informed DAIIE of the contingent fee agreement and asserted that the payments which DAIIE had made directly to Miller and the medical care providers had violated their attorney's lien. After receipt of that letter, all further payments by DAIIE were made through the attorneys. Sloan, Benefiel & Farrer and Stevens thereafter brought a claim as intervening plaintiffs seeking to enforce their attorney's lien with respect to the direct payments made to Miller and the medical care providers. Following a nonjury trial on the attorney's lien claim, the trial court, Paul Nicolich, J., permitted the intervening plaintiffs to enforce their lien against DAIIE and entered a judgment for $16,234.82 in favor

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Attorneys at Law §§ 325, 326, 345.
[2] 7 Am Jur 2d, Attorneys at Law § 343.
  7 Am Jur 2d, Automobile Insurance § 345.

of intervening plaintiffs and against DAIIE. DAIIE appealed. *Held:*

1. Michigan recognizes a common law attorney's lien on a judgment or fund resulting from the attorney's services. However, no lien attaches before judgment except by a special agreement such as a contingent fee agreement, and an attorney's lien is not enforceable against a third party unless the third party has actual notice of the lien or unless circumstances known to the third party are such that the third party ought to have inquired as to the claim of the attorney.

2. Assuming, without deciding, that all the benefits at issue were overdue when paid by DAIIE, those payments would then represent a fund on which the attorney's lien could attach.

3. While findings of fact by a trial court sitting without a jury will not be set aside on appeal unless clearly erroneous, the trial court's finding that, because the March 12 letter seeking benefits and the complaint filed in May both indicated that Miller was being represented by the intervening plaintiffs, DAIIE had sufficient notice of the attorney's lien prior to the actual notice of that lien contained in the October 23 letter is clearly erroneous under the facts of this case. The March 12 letter and the complaint filed in May cannot be held to be sufficient notice in this case of the contingent fee agreement, since the only evidence of such an agreement establishes that the contingent fee agreement was not in existence at the time of the sending of that letter and the filing of the complaint. Further, testimony at trial established that prior to the actual notice in the October 23 letter DAIIE was not aware that intervening plaintiffs handled actions for no-fault personal protection benefits claims on a contingent fee basis and that DAIIE was of the belief that a contingent fee basis was not used by attorneys handling personal protection benefits claims.

Reversed.

1. ATTORNEY AND CLIENT — ATTORNEY LIENS — NOTICE.

Michigan recognizes a common law attorney's lien on a judgment or fund resulting from the attorney's services; however, no lien attaches before judgment except by special agreement, such as a contingent fee agreement, and even then the lien is not enforceable against a third party unless the third party has actual notice of the lien or unless circumstances known to the third party are such that the third party ought to have inquired as to the claim of the attorney.

2. ATTORNEY AND CLIENT — ATTORNEY LIENS — NO-FAULT INSURANCE — PERSONAL PROTECTION BENEFITS.

Any recovery of overdue personal protection benefits payable

under an automobile no-fault insurance policy which is secured through the efforts of an attorney is a judgment or fund against which a lien by the attorney for his fee can attach.

*Gary C. Newton,* for Sloan, Benefiel & Farrer and Richard G. Stevens.

*Sullivan, Hamilton, Ryan & Schulz* (by *Bert W. Schulz),* for defendant.

Before: MACKENZIE, P.J., and J. H. GILLIS and J. E. FITZGERALD,* JJ.

J. E. FITZGERALD, J. This case involved an attorney's lien on no-fault automobile insurance personal protection benefits. After a nonjury trial, the circuit court permitted the intervening plaintiffs to enforce their lien against defendant insurance company, and a judgment in favor of the intervening plaintiffs for $16,234.82 was entered. Defendant appeals as of right.

In July, 1979, plaintiff Jerry Miller was injured in a motor vehicle accident. At the time of the accident, plaintiff was operating a vehicle owned by a friend and insured by defendant. No other vehicle was involved in the accident, and neither plaintiff nor any relative in whose household plaintiff was domiciled had no-fault insurance.

In a letter dated March 12, 1980, plaintiff applied to defendant for no-fault benefits and submitted proof of certain medical expenses. The letter disclosed that the intervening plaintiffs were acting as plaintiff's attorneys. By a complaint dated May 23, 1980, plaintiff commenced this action to recover medical expense and wage loss benefits from defendant. The complaint also disclosed that the intervening plaintiffs were acting as plaintiff's attorneys.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

After plaintiff's letter of March 12, but before the action was commenced, defendant paid plaintiff $21,934 for medical expense and $6,944.50 for lost wages. After the action was commenced, but before November, 1980, defendant paid plaintiff $16,354.86 for medical expenses and $3,456.10 for lost wages. The total amount of payments made before November, 1980, was $48,689.46. Payments for medical expenses were made directly to the medical care providers, and payments for lost wages were made directly to plaintiff. Defendant paid all benefits claimed by plaintiff, although some payments were arguably made after they became overdue pursuant to MCL 500.3142(2); MSA 24.13142(2).

On June 9, 1980, plaintiff executed an agreement with the intervening plaintiffs under which the intervening plaintiffs were to receive 33-1/3 percent of any recovery from defendant that did not exceed $250,000, 20 percent of the next $250,000, and 10 percent of any recovery of more than $500,000 in return for their services. The record does not disclose what fee arrangements between plaintiff and his attorneys existed before June 9.

In a letter dated October 23, 1980, the intervening plaintiffs informed defendant of the contingent fee agreement and asserted that defendant's direct payments to plaintiff and the medical care providers had violated the intervening plaintiffs' attorney's lien. All payments made by defendant after receiving this letter were made through the intervening plaintiffs.

Michigan recognizes a common law attorney's lien on a judgment or fund resulting from the attorney's services. *Bruce v United States,* 127 F Supp 858 (ED Mich, 1955); *Weeks v Wayne Circuit Judges,* 73 Mich 256; 41 NW 269 (1889); *Wipfler v*

*Warren,* 163 Mich 189; 128 NW 178 (1910); *Shank v Lippman,* 249 Mich 22; 227 NW 710 (1929); *Kysor Industrial Corp v D M Liquidating Co,* 11 Mich App 438; 161 NW2d 452 (1968); *Miles v Krainik,* 16 Mich App 7; 167 NW2d 479 (1969). However, no lien attaches before judgment except by a special agreement such as a contingent fee agreement. *Grand Rapids & I R Co v Cheboygan Circuit Judge,* 161 Mich 181, 189; 126 NW 56 (1910); *Shank v Lippman, supra,* 249 Mich 25. An attorney's lien is not enforceable against a third party unless the third party has actual notice of the lien or unless circumstances known to the third party are such that the third party ought to have inquired as to the claim of the attorney. *Grand Rapids & I R Co v Cheboygan Circuit Judge, supra,* 161 Mich 190; *Nichols v Waters,* 201 Mich 27, 34; 167 NW 1 (1918).

In *Aetna Casualty & Surety Co v Starkey,* 116 Mich App 640; 323 NW2d 325 (1982), the Court held that a recovery of no-fault automobile insurance personal protection benefits created a judgment or fund on which an attorney's lien could attach. However, in *In re L'Esperance Estate,* 131 Mich App 496, 502-503; 346 NW2d 578 (1984), the Court distinguished *Starkey* and held that no lien would attach unless the personal protection benefits were overdue. Rather than determine what benefits, if any, were overdue here, we will assume without deciding that all the benefits at issue here were subject to the rule stated in *Starkey.*

Findings of fact by a trial judge sitting without a jury cannot be set aside on appeal unless clearly erroneous. GCR 1963, 517.1. The trial court here found that, because the letter of March 12 and the complaint both informed defendant that plaintiff was represented by attorneys, defendant had sufficient notice of the attorney's lien.

To support the trial court's findings, the intervening plaintiffs point to two Michigan cases, *Grand Rapids & I R Co v Cheboygan Circuit Judge, supra,* and *Lehman v Detroit, G H & M R Co,* 180 Mich 362; 147 NW 628 (1914). In the former case, the attorney expressly informed the defendant that he had a lien on any judgment or settlement. The Court found that such notice was sufficient, even though the details of the attorney's special agreement with his client were not revealed. 161 Mich 189-190. In the latter case, the attorney informed the defendants that he had the case on a contingent basis. The Court held that sufficient evidence of notice was presented to raise a question of fact for the jury. 180 Mich 366. These cases are not persuasive authority here, where the intervening plaintiffs informed defendant neither of their lien nor of their contingent fee agreement.

The intervening plaintiffs also point to *Downs v Hodge,* 413 SW2d 519 (Mo App, 1967), in which the Missouri court held that commencement of an action through an attorney provided sufficient notice. However, authority from other jurisdictions concerning attorney's liens must be applied with caution, because in most other jurisdictions common law attorney's liens have been replaced with liens created by statute. See Anno: *Sufficiency of Notice to Opposing Party (or of Service or Filing Thereof) Required to Establish Attorney's Lien Upon Client's Claim or Cause of Action,* 85 ALR2d 859, 860. In *Downs,* the court applied a Missouri statute under which the attorney's lien attached at the commencement of an action. Commencement of an action through an attorney therefore placed the opposing party on notice that an attorney's lien had attached. In contrast, as we have seen, Michigan's common law attorney's lien does not attach before judgment except by special agree-

ment. In Michigan, therefore, commencement of an action through an attorney does not necessarily show that an attorney's lien has attached.

Arguably, a duty to make an inquiry concerning the existence of an attorney's lien arises in Michigan when commencement of an action through an attorney is coupled with other knowledge by the defendant, such as knowledge that contingent fees are usual in the type of case at issue or such as knowledge of the plaintiff's law firm's fee practices. The intervening plaintiffs point to the following testimony by an agent of defendant on cross-examination:

"*Q*. Mr. Demski, are you familiar with our law firm of Sloan, Benefiel and Farrer?

"*A*. Yes, I am.

"*Q*. And you have done—dealt with our office, or your company adjusters have dealt with our office on occasions previous to this?

"*A*. Yes.

"*Q*. And it is true, is it not, that AAA has previously made medical expense benefits directly through our office?

"*A*. Are you speaking of our office, in general—me— just AAA?

"*Q*. AAA has made, prior to this occasion—

"*A*. I'm sure they have.

"*Q*. And you are familiar with the fact that law firms that represent claimants typically charge or base their fees on a contingency fee basis?

"*A*. Not on PIP.

"*Q*. Not on PIP?

"*A*. No.

"*Q*. Never heard of it?

"*A*. Only through your firm.

"*Q*. Only through our firm?

"*A*. [Nods]

"*Q*. Then you knew that our firm handled such on a contigency fee basis?

"*A.* I don't know what the arrangements were. I'm sure—you know—I was aware that they represented him, yes.

"*Q.* And you are aware that we did charge a fee for handling No-Fault claims?

"*A.* I don't know, Sir. No, I'm not aware of what you charge."

This testimony does not support the claims of the intervening plaintiffs. Although defendant's agent of course knew by the time of trial that the intervening plaintiffs handled such cases on a contingent fee basis, the testimony does not show that the agent acquired this knowledge before October 23, 1980.

We conclude that in Michigan an attorney's lien is not enforceable against a third party unless the third party has actual notice of the lien or knowlege of circumstances suggesting the existence either of a judgment or of a special agreement under which an attorney's lien would attach before judgment. We note that the intervening plaintiffs have not even shown that a contingent fee agreement or other special agreement under which an attorney's lien would attach before the judgment was even in existence at the time of the events on which the intervening plaintiffs rely to show notice, the letter of March 12, 1980, and the complaint of May 23, 1980. *On this record,* the trial court's finding that defendant had notice of the attorney's lien was clearly erroneous.

In view of our resolution of this issue, we need not address the other issues presented.

Reversed.